COX, District Judge.
Butler County, Ohio (“the County”) terminated the employment of its employee, Martin Allen (“Allen), for violating the County’s paid sick leave requirements, and for improperly flexing his scheduled work hours. Allen contended that the County’s paid sick leave requirements conflicted with the Family and Medical Leave Act (“FMLA”), 29 U.S.C. § 2601 et seq., and filed suit against the County. Both parties filed cross-motions for summary judgment before the lower court. The lower court granted partial summary judgment for Allen on the issue of FMLA liability, and allowed the case to proceed to jury trial on the issue of damages. At trial, the lower court allowed the County to present evidence that it would have fired Allen despite the conduct Allen claimed violated the FMLA. The jury returned a verdict for the County. Following trial, Allen filed a motion for attorney fees under the FMLA, which the lower court denied.
Allen filed a timely appeal to this Court, wherein he argues that: 1) the lower court erred in not granting Allen’s motion for attorney fees; and 2) the lower court erred in allowing the County to present evidence showing that the County was justified in terminating Allen for reasons outside the scope of Allen’s FMLA suit. The County filed a cross-appeal, wherein it argues that the lower court erred by granting partial summary judgment in favor of Allen, and not in favor of the County, on the issue of FMLA liability. For the reasons that follow, we agree with the County’s argument on cross-appeal. We therefore REVERSE the lower court’s grant of partial summary judgment for Allen, and REMAND with instructions to grant summary judgment in favor of the County. Because this Court reverses the lower court’s summary judgment in favor of Allen, and instead remands with instructions *391 to grant summary judgment in favor of the County, the remainder of Allen’s issues on appeal are moot.
BACKGROUND
The County hired Allen as an Instrument Technician for its Department of Environmental Services on November 22, 1993. Thereafter, Allen became a member of the American Federation of State, County and Municipal Employees, AFL-CIO (“Union”), which had a Collective Bargaining Agreement (“CBA”) with the County. The CBA’s paid sick leave requirement was as follows:
Employees are responsible for contacting the Employer for each day of an absence in accordance with this Section, unless the Employee is hospitalized or has provided a written doctor’s statement specifying the anticipated date of return.
Aside from incorporating the FMLA into its provisions, the CBA’s sick leave policy outlined the call-in process all Union employees were required to follow in order to receive sick leave benefits. This paid leave policy was separate and distinct from the FMLA policy.
Allen began experiencing health problems in 2002, coincidentally the same time he and his wife were going through a divorce. The County claims Allen’s work performance began to deteriorate at that time, including refusals by Allen to complete assigned tasks. As a result, Allen was issued his first written reprimand on December 11, 2002. After receiving this reprimand, Allen allegedly made untrue and disparaging statements about his immediate supervisor, which led to a second disciplinary action.
Allen and the Union agreed to settle this second disciplinary issue with the County on April 16, 2003. Allen agreed to a three-day unpaid suspension and waiver of any claims he may have had, in exchange for the County not terminating him.
Despite the April 2003 settlement agreement between Allen and the County, Allen was soon again involved in disciplinary issues. This led to another ten-day unpaid suspension on September 13, 2003. The Union filed a grievance against the County in response to this suspension, and in October of 2003, while that grievance was pending, Allen received yet another pre-disciplinary notice.
To resolve the September and October 2003 disciplinary issues, Allen and the Union voluntarily entered into a “last chance agreement” with the County on December 1, 2003. Under this agreement, Allen received an additional ten-day unpaid suspension, and was placed on what the County termed “final warning status.” Allen further agreed that if he failed to comply with any of the County’s requirements for the use of leave, or for any other disciplinary offenses, he understood that his employment would be immediately terminated.
In addition to these other disciplinary problems, Allen had previously been informed by his supervisors to not “flex” his time (i.e., punch in early and then punch out earlier than the end of his expected shift). Despite this prohibition, however, Allen repeatedly flexed his hours on sever- • al work days between May 18 and May 28, 2004.
On June 1, 2004, before the County could provide Allen with yet another pre-disciplinary notice for these “flex time” violations, Allen called into work claiming he would be seeing a doctor that day due to a personal illness. As Allen was unsure when he would be returning to work, his supervisor advised him that his requested leave would be classified as FMLA leave pending certification, instructed him to *392 have his doctor complete an FMLA certification form, and instructed Allen that he would be required to call in daily pursuant to the CBA’s provisions on paid sick leave.
By June 10, 2004, over a week after Allen began missing work due to his personal illness, Allen still had not provided the County with a written doctor’s note specifying his anticipated date of return to work. On that same day, Allen failed to call in his absence as required by the CBA. The County treated this failure to call in as another disciplinary offense, and scheduled yet another disciplinary hearing for Allen to address both Allen’s failure to call in during his paid sick leave, and his purported “flex time” violations.
At the ensuing disciplinary hearing, held on July 29, 2004, the County found that Allen had failed to abide by the CBA’s requirement for daily call-in while on sick leave without FMLA certification. The County also found that Allen had improperly “flexed” his work hours on multiple occasions between May 18, 2004 and May 28, 2004. As both of these disciplinary infractions violated Allen’s “last chance agreement” with the County, the County terminated Allen’s employment, effective August 4, 2004.
Allen filed suit alleging that the County interfered with his right to FMLA leave under 29 U.S.C. § 2615(a)(1). Both parties filed cross-motions for summary judgment in the lower court, Allen arguing that the County violated the FMLA interference provisions as a matter of law, and the County arguing that their call-in procedures did not interfere with Allen’s FMLA rights. The lower court granted partial summary judgment for Allen, finding that the County’s call-in policy put unreasonable burdens upon an individual attempting to access FMLA leave. The case proceeded to jury trial on the issue of damages.
Before trial, the lower court denied Allen’s motion in limine to prevent the County from arguing that Allen would have been fired despite the County’s FMLA violations. The County sought to bring forth evidence that, under the last chance agreement, Allen would have been fired for his “flex time” violations. . The lower court allowed the County to present such evidence, and the jury returned a verdict in favor of the County, awarding Allen no damages for his FMLA claim.
After trial, Allen filed a motion for attorney fees pursuant to 29 U.S.C. § 2617(a)(3), which allows a “prevailing party” in an FMLA action to claim reasonable attorney fees. Allen contended that, as he had been granted partial summary judgment on the liability issue by the lower court, this entitled him to attorney fees. The lower court disagreed, and denied the award.
On appeal, the County challenges the lower court’s grant of partial summary judgment. Allen also appeals the lower court’s evidentiary ruling denying his motion in limine, as well as the lower court’s denial of his motion for attorney fees.
ANALYSIS
The County appeals the lower court’s grant of partial summary judgment for Allen on the issue of FMLA liability. The Court reviews summary judgment decisions by the lower court under a de novo standard. Cavin v. Honda of America, 346 F.3d 713 (6th Cir.2003).
The FMLA, 29 U.S.C. § 2601 et neq., ■ provides for unpaid leave for up to twelve weeks in a twelve month period for employees with a serious medical condition. 29 U.S.C. § 2612(a)(1). These twelve weeks of leave may be taken continuously in one block of time, or intermittently *393 when medically necessary. 29 U.S.C. § 2612(b)(1).
FMLA leave is generally unpaid leave, but “[t]he Act encourages businesses to adopt more generous policies, and many employers have done so.” Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 84, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). Congress encouraged the enactment of such additional programs, noting that “[n]othing in this Act ... shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act.” Id. at 87, 122 S.Ct. 1155, citing 29 U.S.C. § 2653. When an employer elects to offer such additional paid benefits, the employer is within its rights to count such leave toward the twelve week FMLA guarantee, “[a]s long as these policies meet the Act’s minimum requirements....” Id.
The FMLA regulations clarify an employee’s rights and responsibilities under the Act, including an allowance for employers to run paid leave programs concurrent with unpaid FMLA leave:
Generally, FMLA leave is unpaid leave. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may reqitire the employee to stibstitute accrued paid leave for unpaid FMLA leave. The term “substitute” means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid leave. Accordingly, the employee receives pay pursuant to the employer’s applicable paid leave policy during the period of otherwise unpaid FMLA leave. An employee’s ability to substitute accrued paid leave is determined by the terms and conditions of the employers normal leave policy. When an employee chooses, or an employer requires, substitution of accrued paid leave, the employer must inform the employee that the employee must satisfy any procedural requirements of the paid leave policy only in connection with the receipt of such payment. See § 825.300(c). If an employee does not comply with the additional requirements in an employer’s paid leave policy, the employee is not entitled to substitute accrued paid leave, but the employee remains entitled to take unpaid FMLA leave. Employers may not discriminate against employees on FMLA leave in the administration of their paid leave policies.
29 C.F.R. § 825.207(a) (emphasis added). This Court, albeit in an unpublished opinion, recognized that § 825.207(a) allows employers to run paid leave and unpaid FMLA leave concurrently. See Hicks v. Leroy’s Jewelers, Inc., 2000 WL 1033029, *4 (6th Cir. July 17, 2000) (“... the regulations clearly provide that an employee’s FMLA leave may run concurrently with paid medical or sick leave”).
In the instant case, Allen was properly informed by the County of the requirements expected of him to receive sick pay during his FMLA leave. However, the relevant issue in this case — what happens when an employer runs sick leave concurrently with FMLA leave and the employee violates the more stringent requirements of the paid sick leave policy— is an issue of first impression for this Court.
The Court begins its analysis mindful of its prior holding in Edgar v. JAC Products, 443 F.3d 501 (6th Cir.2006). In Edgar, a terminated employee alleged that his termination as well as the employer’s actions prior to termination constituted *394 FMLA violations. Edgar suffered from extremely high blood pressure, and his employer required him to have his doctor fill out a certification form before it would certify his FMLA leave. Edgar at 504-05. This Court upheld the employer’s requirement for medical certification, holding that “interference with an employee’s FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.” Id. at 508. Thus, this Court has already held that the mere occurrence of interference with an employee’s FMLA rights is not a per se FMLA violation.
The dissent regards our reliance on Edgar as misplaced, arguing that the County had no reason for terminating Allen which was “legitimate and unrelated to the exercise of FMLA rights.” Dissent at 400 (quoting Edgar, 443 F.3d at 508). The dissent further argues:
[i]t cannot be said that Allen’s failure to call in was somehow unrelated to the exercise of his FMLA rights; Allen was required to call in sick precisely because he was out on leave which was undisput-edly FMLA-qualified leave.
Id. at 400 (emphasis in original). While we share the dissent’s concern that employers must proffer such legitimate, unrelated reasons for terminating an employee, here, the County had not one, but tiuo proffered reasons for terminating Allen: 1) his “ñex time” violations; and 2) his failure to abide by the paid sick-leave call-in requirement. The County fired Allen for both violations.
This Court has also noted that employers may rightfully terminate an employee for failure to comply with notification and medical certification procedures inherent in FMLA regulations. See Killian v. Yorozu Automotive Tennessee, Inc., 454 F.3d 549, 555 (6th Cir.2006). Though Killian held that the. employer in that case could not demonstrate such violations by its employee, the Court noted as follows with respect to the relevant FMLA regulations:
Yorozu directs our attention to 29 C.F.R. § 825.310, which permits an employer to require a returning employee to provide a fitness-for-duty certification through a uniformly applied policy. If an employee fails to provide such certification or new medical certification of a serious health condition at the end of the employee’s leave period, the employee may be terminated.
Killian, 454 F.3d at 555 (internal citation omitted).
While the issue in this case — whether an employee on FMLA leave may be terminated for violating the.more stringent requirements of a concurrent paid sick leave policy — is one of first impression for this Court, other circuits have stated that an employee can be required to comply with the reasonable requirements of an employer’s sick leave policy while on FMLA leave. In Gilliam v. U.P.S., 233 F.3d 969 (7th Cir.2000), the Seventh Circuit held that the FMLA does not preclude an employer from enforcing a collective bargaining provision requiring the employee to notify the employer of their intended date to return to work. “[NJothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee’s plans.” Gilliam at 972. The Seventh Circuit also has allowed an employer to impose more burdensome “return to work” requirements for individuals on FMLA leave than were mandated by statute. Harrell v. United States Postal Service, 445 F.3d 913, 923 (7th Cir.2006).
The facts of this case are analogous to those of Callison v. City of Philadelphia, 430 F.3d 117 (3d Cir.2005). Callison was a *395 municipal employee of the City of Philadelphia, and had a penchant for abusing his paid sick leave. Callison at 118. “Because of the significant amount of [Calli-son’s] absences, the City placed Callison on a Sick Abuse List on October 30, 2000.” Id. Notwithstanding that status, however, Philadelphia’s employee manual contained the following requirement for all employees on paid sick leave:
During regular working hours, when an employee is home on sick leave, the employee must notify the appropriate authority or designee when leaving home and upon return.
Id. Callison, while on the Sick Abuse List, took a sick day on January 8, 2001. That same day, Callison left his home without informing his employer of his intention to do so, and missed a telephone call from an investigator. Id. at 119. Callison was charged with a violation for this infraction, and while on subsequent FMLA leave from January 24 to April 17, 2001, was repeatedly not at home without notifying the City’s hotline, resulting in additional unpaid suspensions. Id.
In his FMLA interference suit, Callison argued “that the FMLA anti-abuse and eligibility provisions conflict with the City’s call-in requirement in its sick leave policy and therefore the requirement should not have applied” while he was on leave. Id. at 120. “He asserts that once an employee is pre-approved for FMLA leave, he/she should be left alone.” Id. (internal citations omitted). The Third Circuit rejected this argument:
[T]he [lower] Court reasoned that the purpose of the FMLA is not compromised by this policy because it “neither prevents employees from taking FMLA leave nor discourages employees from taking such leave”. It simply ensures that employees do not abuse their FMLA leave. We agree ... [T]he eligibility requirements contained in 29 U.S.C. § 2612(a)(1) do not conflict with the call-in procedure. Unlike the eligibility provision, the call-in procedure does not serve as a pre-requisite to entitlement of FMLA leave. Rather, the procedure merely sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA. The purpose of this procedure is to provide an additional safeguard against sick leave abuse by employees ... Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave, particularly those who enter leave while on the employer’s Sick Abuse List.
Id. at 120-21 (emphasis added).
Just as in Callison, here the CBA Allen’s Union signed with the County required individuals on paid sick leave to perform requirements not necessary under the FMLA: Allen was required to either 1) procure a note from a doctor letting his employer know when his employer could expect Allen’s return; or 2) call the County daily with updates as to his condition. Just as in Callison, this procedure “merely sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA.” Callison at 120.
Further, just as was the case in Calli-son, the County’s call-in requirement helps “ensurfe] that employees who are on leave from work do not abuse their leave....” Callison at 121. The Third Circuit found such motivation by employers particularly persuasive when faced with employees with a penchant for abusing such privileges, noting that “those who enter leave while on the employer’s Sick Abuse List” were rightly subjected to such policies. Id. Like the employee in Callison, here the County had document *396 ed a history of personnel issues with Allen. In Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199 (11th Cir.2001), however, the Eleventh Circuit found that the fact an employee had failed to exhaust his paid sick leave when he allegedly requested FMLA leave did not preclude the city from being liable for discharging him. The Strickland court described the right of an employer to substitute paid leave for unpaid FMLA leave, but noted as follows:
Neither Congress nor the Department of Labor could have intended ... to allow employers to evade the FMLA by providing their employees with paid sick leave benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer’s paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.
Strickland, 239 F.3d at 1205. This Court agrees that employers cannot evade their responsibilities under the FMLA. However, the facts of Stnckland are distinguishable from the instant case. Here, the County did not classify Allen’s leave as non-FMLA. Instead, the County provisionally classified the leave as FMLA leave, pending Allen’s furnishing the necessary certification, and merely imposed call-in requirements to police its employees’ use of paid sick leave; Allen remained on concurrent FMLA leave the entire time, and remained entitled to all protections afforded by that Act with respect to his right to unpaid leave. In fact, Allen does not claim that he was denied FMLA leave.
The lower court’s holding stands in contrast to the analyses of our sister circuits in similar situations. The lower court’s holding was as follows:
The Court finds as a matter of law tl/at Defendants’ daily call-in requi.reiii.eiit conflicts with the notice requirements of the FMLA for unforeseeable leave ... There is no requirement that on.ce the employee gives notice of the need for leave and the employer is aware if the reason for the leave, the employee nriisi provide additional notice by calling ■in every day during the period of leave. In this regard, the CBA is more stringent than the FMLA. Defendant may not lawfully interfere with Plaintiffs FMLA rights by enforcing stricter notice requirements, regardless of whether those requirements were contained in the CBA or in an internal company policy.
(JA pp. 43-44)(emphasis added). We disagree, and instead hold that the County’s internal call-in policy neither conflicts with nor diminishes the protections guaranteed by the FMLA. In so holding, we adopt the reasoning of the Third Circuit in Callison, that “[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave....” Callison, 430 F.3d at 121.
Pursuant to the terms of Allen’s December 1, 2003 “last chance agreement” with the County, Allen agreed that the County could terminate his employment for any further violations of the County’s leave requirements, or for any other disciplinary offenses. At the July 29, 2004 disciplinary hearing, the County found that Allen had violated the “last chance agreement” in two ways: Allen’s failure to abide by the CBA’s call-in policy; and Allen’s improper “flexing” his work hours without prior approval. Under the “last chance agreement,[1]” these violations gave the County the authority to terminate Allen’s employment, and the County exercised *397 that authority in terminating Allen effective August 4, 2004.
The lower court found the County liable for interfering with Allen’s right to take FMLA leave. We disagree for the reasons stated above, and therefore REVERSE and REMAND with instructions for the lower court to grant summary judgment in favor of the County. In light of this conclusion, the Court need not reach any of Allen’s issues on appeal.
CONCLUSION
For these reasons, we REVERSE the lower court’s grant of partial summary judgment in favor of Allen, and REMAND with instructions to grant summary judgment in favor of the County.

. On appeal, the employee in Cavin “chose to simplify his claim” by appealing only the June 1999 denial of FMLA. Id. at 718.