NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0311n.06

Case No. 24-3524

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 24, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| SHAWN PORTER, | ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| JACKSON TOWNSHIP HIGHWAY DEPARTMENT et al., | ) ) ) | |
| Defendants-Appellees. | ) ) | O P I N I O N |

Before: BOGGS, LARSEN, and DAVIS, Circuit Judges.

BOGGS, Circuit Judge. Shawn Porter worked a manual-labor job in Jackson Township's Highway Department ("Department") for about nine years. He injured his shoulder outside of work and took leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. Porter returned and requested light-duty assignments, but he was instead placed on vacation time followed by unpaid leave. When the Department heard that during his leave Porter had been doing manual labor inconsistent with his claimed medical restrictions, it hired a private investigator who videotaped Porter lifting and carrying items, as well as showing his brother-in-law how to cut a sidewalk. Under Porter's collective-bargaining agreement and the Township Personnel Policy, the Department charged that Porter violated his medical restrictions and lied about his disability status. The Department concluded that there was just cause to terminate Porter. Porter was fired after unsuccessfully challenging this finding and filed suit in state court against Appellees, the Jackson

Township Highway Department and the Jackson Township Board of Trustees. After Appellees removed to federal court and moved for summary judgment, the district court granted Appellees summary judgment on all of Porter's claims.

Porter appeals only the grant of summary judgment on his claim that Appellees fired him in retaliation against his exercise of FMLA leave. We affirm because Porter fails to prove any pretextual reason for his termination.

## I. BACKGROUND

In October 2012, Appellees hired Porter into the Public Works Department of Jackson Township's Highway Division. Porter's job entailed mostly manual labor — using power tools, sledgehammers, picks, and air hammers to dig ditches and dig up pavement.

In January 2021, Porter injured his shoulder outside of work. The resulting surgery made him unable to work. On February 18, 2021 (the date of his surgery), he began taking FMLA leave. Porter's doctor wrote after surgery that Porter was "totally disabled" and unable to return to work until May 20, 2021, and even then only with particular restrictions: no overhead lifting, no lifting over ten pounds, and no digging holes by hand. These restrictions were to continue until Porter's next appointment, which was on June 18, 2021.

Around May 17, 2021, Porter emailed Highway Department Superintendent Rich Rohn, hoping to return to work with the medical restrictions. But Rohn responded that there were no "light duty" assignments or assignments with restrictions within the Public Works Department and told Porter to request unpaid leave. After Porter's FMLA-leave balance was exhausted that month, Appellees placed Porter on 40 hours of vacation time followed by unpaid leave from May 20,

2021, to June 18, 2021. During Porter's unpaid leave, he and the Township paid their own shares of his health benefits.

The controversy leading to this case began in late May 2021 when Appellees heard that Porter, notwithstanding his stated medical restrictions, had been doing manual labor. Appellees hired private investigator Scott Steidl to look into the situation. After following Porter in late May and early June 2021, Steidl reported to Appellees that Porter was performing construction activities and appeared to show no struggles with movements such as lifting, bending, and carrying. Steidl filmed Porter working at his brother-in-law's home, bending at the waist while using a tape measure and chalk line, using both arms as he worked in the yard, and operating a concrete saw. Porter conceded in his deposition that he had been "[c]halk lining, measuring, and showing [his brother-in-law] how to cut a sidewalk."

Around June 18, 2021, Porter gave Appellees another medical-restriction note with the same restrictions as before. This second note covered the period from June 21, 2021, to Porter's next medical evaluation on July 9, 2021.

On June 21, 2021, Rohn submitted a Statement of Charges to Township Administrator Michael Vaccaro. Rohn referenced the Township's collective-bargaining agreement and personnel-policy sections on falsification to charge that, though Porter had requested unpaid leave (and the Township's Board of Trustees had granted it) based on a medical note indicating that Porter was "totally disabled from work," Porter had been observed performing manual labor and operating heavy equipment during this unpaid leave. Rohn argued that these acts violated the medical restrictions that his doctor had imposed and showed that Porter was "under no disability."

Rohn noted that the explanation was based on an "Administrative Investigation" that he had conducted, and Rohn recommended Porter's termination.

Porter was scheduled for a pre-disciplinary conference, which was held on June 28, 2021, before Township Fire Chief Timothy Berczik. Porter was represented by Rich Cossell, his union representative. Berczik found that Porter was either not compliant with the medical restrictions or more able to perform work than he had claimed. Berczik held that Porter had "abused the privilege of being place[d] on *unpaid leave status* while still receiving extended medical benefits twice during the course of this situation." Berczik concluded that "there is just cause for the Township Board of Trustees to terminate Mr. Porter immediately." After Porter unsuccessfully challenged Berczik's findings and recommendation, the Township's Board of Trustees terminated Porter's employment effective July 6, 2021.

On July 5, 2023, Porter filed a complaint against Appellees in Ohio state court, alleging four claims for relief: (1) intentional infliction of emotional distress under Ohio common law, (2) violation of the FMLA, (3) retaliation under the FMLA, and (4) invasion of privacy under Ohio common law. Claiming federal-question and supplemental jurisdiction, Appellees removed the case to the United States District Court for the Northern District of Ohio on July 25, 2023. Appellees denied all allegations in their answer on July 26, 2023.

On January 12, 2024, Appellees moved for summary judgment on each claim. On May 15, 2024, the district court granted Appellees summary judgment on all four claims and dismissed Porter's complaint in its entirety. Porter timely appealed. Before us, he challenges only the district court's grant of summary judgment on his FMLA-retaliation claim.

## II. STANDARD OF REVIEW

"We review de novo the district court's grant[] of summary judgment" on Porter's claim of FMLA retaliation. *Chapman v. Brentlinger Enters.*, 124 F.4th 382, 390 (6th Cir. 2024). "A party is entitled to summary judgment if it has shown there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law." *Ibid.*; *see* Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility" of showing entitlement to summary judgment, and Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All evidence is construed "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III. ANALYSIS

The district court was correct. Porter fails to prove any pretextual reason for his termination. Appellees are thus entitled to summary judgment on his FMLA-retaliation claim.

The FMLA "prohibits an employer from discharging or discriminating against an employee for 'opposing any practice made unlawful by' the [FMLA]." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (quoting 29 U.S.C. § 2615(a)(2)). "Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Ibid.* Under this framework, we first ask whether Porter made a "prima facie showing of retaliation," which requires him "to provide evidence that (1) [he] engaged in a statutorily protected activity; (2) [he] experienced an adverse employment action; and (3) there is a causal connection between the

protected activity and the adverse employment action." *Chapman*, 124 F.4th at 401 (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008)). Second, if Porter makes this showing, "the burden shifts to [Appellees] to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Bryson*, 498 F.3d at 570. And third, if Appellees offer such evidence, "the burden shifts back to [Porter] to show that the [Appellees'] proffered reason is a pretext for unlawful discrimination." *Ibid.*

The third part is the only issue before us on appeal. Porter claims that "the asserted reason for his termination — the alleged violation of his medical restrictions — was pretextual." Porter argues that this reason either "had no basis in fact" or "was insufficient to warrant the adverse action insofar as it was consistent with the light duty authorized under his medical restrictions." In his view, though Appellees' investigator observed and videotaped him holding an electric concrete saw and believed it to exceed the ten-pound weight restriction imposed by his physician, "the concrete saw was never weighed, and no similar saw was weighed or entered into evidence at the pre-disposition hearing." The investigator thus never witnessed an "actual" violation of Porter's medical restrictions, and Porter denied any such violation. And though Porter conceded that he was chalk lining, measuring, and showing his brother-in-law how to cut a sidewalk, "those activities constituted light duty."

We reject Porter's pretext arguments. True, a plaintiff can show pretext in our circuit by showing either "that the proffered reasons had no basis in fact" or "that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)). But neither showing was made here.

A.  *Failure to Show "No Basis in Fact"*

A plaintiff can show pretext by showing that the employer's proffered reasons for terminating had "no basis in fact." *Ibid.*  But under our circuit's "honest-belief rule," a claim of pretext based on an assertion of no basis in fact "may be defeated by conclusive evidence that the defendant 'honestly believed' its proffered reason, and that the belief was reasonably based 'on particularized facts that were before it at the time the decision was made.'"  *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713–14 (6th Cir. 2007)).  "The defendant may rebut the plaintiff's evidence of pretext, by demonstrating that the defendant's actions, while perhaps 'mistaken, foolish, trivial, or baseless,' were not taken with discriminatory intent."  *Clay*, 501 F.3d at 714–15 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)).  Then, the plaintiff must "produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action."  *Smith*, 155 F.3d at 807–08.

The honest-belief rule forecloses Porter's argument that there was no basis in fact. Appellees honestly believed, based on the investigator's particularized observations and video recording, that Porter violated his medical restrictions.  "The burden of production thus shifted to [Porter] to demonstrate that [Appellees'] reliance on those facts was unreasonable" because it stemmed from an impermissible retaliatory motive. *Id.* at 808.  But "[t]his [Porter] has been unable to do." *Ibid.*  In *Smith*, an employer terminated its employee after determining that the employee had failed to disclose his narcolepsy.  *Ibid.*  This determination was based on letters from the employee's treating physician stating that the employee was being treated for narcolepsy, and the employee was unable to produce proof that he had been fired for a discriminatory reason.  *Ibid.* Here, the evidence is even more concrete than the letters in *Smith*: on top of the investigator's

notes, Appellees saw with their own eyes the video evidence of Smith violating his requested medical restrictions. And given that "[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave," Appellees' investigation — which presented the pertinent facts and provided Porter due process by sharing the information gathered at a hearing with union representation — underscores that Porter's termination had a basis in fact and followed an opportunity for rebuttal. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 284 (6th Cir. 2012) (emphasis omitted) (quoting *Allen v. Butler Cnty. Comm'rs*, 331 F. App'x 389, 395 (6th Cir. 2009)).

It is not enough that Porter believes that there was no "actual" violation of his medical restrictions on the theory that "the concrete saw was never weighed, and no similar saw was weighed or entered into evidence at the pre-disposition hearing." We ask not whether there *was* an actual violation, but whether Appellees reasonably *believed* that there was an actual violation. They did. And as for the concrete saw, "we do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807. Even if Appellees did not personally lift the saw, they took reasonable steps to ascertain the saw's weight by comparing the saw to one previously owned by the Township and researching the manufacturer's product specifications. Based on this comparison, they reasonably believed at the time of making the decision to terminate Porter that the saw in his hands weighed around 16 pounds (thus exceeding the ten-pound weight restriction).

## B. *Failure to Show "Insufficient to Motivate"*

A plaintiff can also show pretext by showing that the employer's proffered reasons for terminating were "insufficient to motivate" the firing. *Chen*, 580 F.3d at 400. This showing

"ordinarily . . . consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Hedrick*, 355 F.3d at 460.

Porter fails to make this showing. He raises no evidence of similarly situated employees. Without making "an affirmative showing with proper evidence," Porter cannot defeat Appellees' motion for summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Porter may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Porter's sole argument is that Appellees' reason for terminating him was "insufficient to motivate the[ir] . . . action" because chalk lining, measuring, and showing his brother-in-law how to cut a sidewalk were all activities that constituted "light duty."

But this argument misunderstands the legal standard. The question is whether, for an employee who has not taken FMLA leave (i.e., is similarly situated but for membership in Porter's claimed protected class), violation of medical restrictions (Appellees' proffered reason) would be a "sufficient" reason to motivate firing that employee. Whether Porter's work was "insufficient" to motivate because it was "light duty" as a definition of physical labor is irrelevant.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM**.

9