NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0696n.06

No. 13-6527

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 08, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PATRICIA A. TRAVERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| CELLCO PARTNERSHIP, d/b/a VERIZON | ) | |
| WIRELESS, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: ROGERS and GRIFFIN, Circuit Judges; and VAN TATENHOVE, District Judge.[*]

ROGERS, Circuit Judge. Patricia Travers worked at Cellco Partnership, d/b/a Verizon Wireless, for two years and was terminated after taking several weeks of FMLA-approved medical leave, and also after receiving a series of disciplinary warnings for repeated violations of Verizon's code of business conduct. Travers sued Verizon for interference and retaliation under the FMLA and discrimination under the ADA. The district court granted summary judgment in favor of Verizon and dismissed Travers's complaint, and Travers appealed that decision. No genuine issue of material fact exists and summary judgment was therefore proper.

From May 2008 until June 2010, Patricia Travers worked as a senior representative in customer service for Cellco, which does business as Verizon Wireless. R. 1, at 2, PageID # 2; R. 20-1, at 13, 30, PageID # 162, 179. During the final year of her employment at Verizon,

---

[*] The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Travers suffered from migraine headaches and a heart condition, and as a result she took several weeks of Family and Medical Leave Act (FMLA) leave. Travers was first approved for FMLA leave for migraine headaches in November 2009. R. 1, at 3, PageID # 3; R. 20-2, at 6, 12, PageID # 259, 265; R. 20-2, at 21–22, PageID # 274–75; R. 29-5, at 46, PageID # 747. Travers's migraines were so severe that once, in July 2009, she left work in an ambulance and had a physician excuse her from work the following day. R. 31, at 1, PageID # 891.

Next, in March 2010, Travers began receiving treatment for a heart condition and again requested FMLA leave. R. 20-2, at 24, PageID # 277; R. 29-5, at 41, PageID # 742; R. 29-1, at 27–28, PageID # 579–80. That year, Travers took approved intermittent FMLA leave on February 9 and 12, 2010, and from approximately April 14–May 26, 2010 and from June 2–18, 2010. R. 1, at 3–4, PageID # 3–4; R. 20-1, at 4–6, PageID # 153–55; R. 29-5, at 46, PageID # 747. On June 2, 2010, Travers experienced heart palpitations while driving to work and, shortly thereafter, lost consciousness in her car in the parking lot of her office. R. 1, at 4, PageID # 4; R. 29-1, at 33–35, PageID # 585–87. Travers began wearing a heart monitor to work, and eventually, in March 2011, a cardiac defibrillator was implanted in her body to stabilize her heart condition.

While employed at Verizon, Travers was subject to disciplinary action for violating Verizon's code of business conduct and attendance policy.[1] Travers first received a "verbal

---

[1] Verizon has a progressive disciplinary policy which begins with a verbal warning ("counseling"), then escalates to a written warning, then a final written warning, and ultimately possible review for termination. R. 29-2, at 5–6, PageID # 621–22; R. 39, at 1–2, PageID # 1285–86. Disciplinary actions for attendance, performance, and code of conduct violations are handled separately, and warnings remain in effect for different periods of time. R. 20-3, at 3,

warning" in June 2009 for violating the code of business conduct because she was observed improperly handling her voice mail account. R. 20-2, at 47–50, PageID # 300–03. The following month, in July 2009, Travers received verbal "coaching" after she was thrice observed proactively offering to waive mail-in rebates without the customers' having requested to match the online price. R. 20-2, at 49–50, PageID # 302–03. Verizon's code of conduct prohibited representatives in Travers's position from proactively waiving mail-in rebates, and under the code waiving such a rebate required supervisor approval. R. 20-6, at 26, PageID # 450; R. 20-3, at 29, PageID # 340; R. 29-10, at 19, PageID # 876. Travers was reminded not to match online rebates unless the customer requested it, was instructed to seek supervisor approval before matching any online prices, and was notified that these instructions could result in corrective action, up to and including termination. R. 29-3, at 3, PageID # 647. In August 2009, Travers again proactively offered to waive mail-in rebates on three different customer calls, and offered "a free phone at no cost to you," when the promotion actually required a rebate. R. 20-1, at 37–38, PageID # 186–87; R. 20-2, at 49–50, PageID # 302–03; R. 29-5, at 29–31, 50, 54–55, PageID

---

PageID # 314; R. 29-2, at 6, PageID # 622. Code of conduct violations may not start at a verbal warning, depending on the severity of the infraction. R. 29-2, at 6, PageID # 622. Code of conduct violations committed within the time frame of a prior disciplinary action and for the same behavior as the prior violation result in an escalation of the warning. R. 29-2, at 6, PageID # 622. For code of conduct violations, a verbal warning lasts three months, a written warning lasts six months, and a final written warning lasts nine months. R. 29-2, at 6, PageID # 622. However, unlike disciplinary actions for attendance and performance, which reset after the expiration of each warning, disciplinary actions for code of conduct violations do not restart after the expiration of the time frame for any specific warning. R. 29-2, at 7, PageID # 623.

# 730–32, 751, 755–56. As a result, Travers received a written warning in September 2009, which remained in effect for six months.[2] R. 29-1, at 41–44, 46, PageID # 593–96, 598.

Ultimately, Travers received a final written warning for code of conduct violations in March 2010 because on one call she proactively waived a rebate and represented the order as an online price match, and on another call she inappropriately offered a free month of service promotion.[3] R. 20-2, at 51–52, PageID # 304–05; R. 20-3, at 15–17, PageID # 326–28; R. 20-2, at 51–52, PageID # 304–05; R. 29-5, at 43, 56–57, PageID # 744, 757–58; R. 29-10, at 10–11, 13, 20–21, PageID # 867–68, 870, 877–78. The following month, on April 21, 2010, Travers waived a mail-in rebate without notifying the customer and submitted the order for approval as an online price match request from the customer, which it was not. R. 20-3, at 24–26, 31, PageID # 335–37, 42; R. 29-5, at 38, PageID # 739; R. 29-10, at 8–9, PageID # 865–66. A supervisor discussed the call with Travers, who remembered the caller but did not remember the order or the rebate. R. 53-2, at 1, PageID # 1349. Travers disputes that she offered a rebate on the April 21, 2010, call. R. 20-1, at 43, PageID # 192.[4]

---

[2] Travers signed the warning but later denied proactively offering a rebate, didn't remember the call, and disagreed with the warning. Around the same time as the September 2009 written warning, Travers failed a number of call audits, often for using incorrect discount reason codes and improperly applying discounts. R. 29-3, at 3, PageID # 647; R. 29-5, at 17, 21–22, 26, 28, 32, PageID # 718, 722–23, 727, 729, 733.

[3] Again, Travers signed the warning but later denied proactively offering a free month and now doesn't remember the call. R. 29-1, at 44–45, PageID # 596–97.

[4] Travers also was disciplined for several attendance policy violations. Travers was first placed on written warning in October 2008. R. 29-3, at 1, PageID # 645; R. 29-10, at 15, PageID # 872. On February 2, 2009, Travers received a final written warning for attendance violations, which indicated that she had exceeded the number of unscheduled absence hours allowed under the attendance policy. R. 29-2, at 15–16, 27 PageID # 631–32, 643. Travers missed six more hours on April 14 and 17, 2009, and subsequently received a final written warning (reiterated)

Travers was finally terminated from her job on June 21, 2010, her first day at work after taking FMLA leave. R. 1, at 4, PageID # 4. Verizon records listed "integrity" as the reason for termination, detailed Travers's chronology of corrective action, and stated that the triggering event was the April 21, 2010, call during which Travers proactively waived a mail-in rebate.[5] R. 29-3, at 2, PageID # 646, R. 29-10, at 16, PageID # 873. Minyarn Pratt, Travers's performance supervisor, and Kimberly Gibson-Harris, a manager, informed Travers of her termination. R. 23, at 1, PageID # 500; R. 29-1, at 6–7, 46, PageID # 558–59, 598. Travers alleges that at the termination meeting Gibson-Harris said, "you've missed a lot of work," and "we need you here." R. 1, at 4, PageID # 4; R. 20-1, at 3, 42, PageID # 152, 191; R. 29-1, at 7, PageID # 559; Appellant's Br. at 33–34. Gibson-Harris was not Travers's manager, did not make the recommendation or decision to terminate Travers, and denied making the alleged comment in the termination meeting. R. 23, at 1–2, PageID # 500–01.

---

for attendance violations on April 29, 2009. R. 29-2, at 27, PageID # 643; R. 29-3, at 1, PageID # 645. With those additional absences, Travers had 75 hours of unscheduled absences, which so exceeded the number of acceptable unscheduled absences that she surpassed the 75-hour threshold that qualified individuals for termination of employment; yet instead of termination, Verizon placed Travers on a final written warning. R. 29-2, at 16, 27, PageID # 632, 643. A January 2010 performance appraisal indicated that Travers needed "to focus on managing her time off in 2010," and was under a final written warning with respect to attendance. R. 20-2, at 39, PageID # 292; R. 29-5, at 34, PageID # 735.

[5] Minyarn Pratt, Travers's performance supervisor, drafted the documentation for her termination, including Travers's termination request form, but did not make the decision to terminate Travers. R. 29-2, at 21, 27 PageID # 637, 643. The termination request form documents the reasons for termination and is sent to human resources, then to the director of human resources, and goes through "many chains for review to determine whether or not an employee will be separated from the company." R. 29-2, at 21–22, PageID # 637–38. Pratt had no access to what Travers's qualifying serious illness was. R. 29-2, at 25–26, 28, PageID # 641–42, 644.

Denise Gowler, a Verizon manager, made the initial recommendation that Travers be terminated. R. 29-9, at 3, PageID # 838. Verizon's standard procedure requires approval of the termination request from multiple individuals in the management hierarchy, including the human resources manager. Because Travers's human resources manager, LaJuana Miller, was out of the office, a human resources consultant who assisted Miller, Schreba Haynes, sent to human resources' next level of authority, Nyla Wright, an email containing Travers's termination request form and a second, one-page document entitled, "South Area Termination Request Form." This request form, filled out by Haynes, contained the following statement: "The decision to terminate Patricia's employment is supported by local HR. Specifically, Patricia violated the attendance policy." R. 53-1, at 1, PageID # 1348; R. 56-1, at 1–2, PageID # 1361– 62. Haynes did not make and was not involved with the decision to terminate Travers, and Haynes claims the indication that the reason for Travers's termination was attendance, instead of integrity, was a mistake. R. 56-1, at 1–2, PageID # 1361–62.

After her termination, Travers applied for and received unemployment benefits, and her application for benefits (which she later denied filling out) stated: "I worked as a customer service representative and was instructed along with my coworkers not to give instant rebates to customers without approval by a manager. I was discharged for giving an instant rebate to a customer without approval by my manager." R. 29-1, at 47–48, PageID # 599–600. Travers also filed an employment discrimination claim with the EEOC in September 2011, stating that her cardiac condition was the basis of discrimination. R. 29-1, at 29, PageID # 601; R. 20-2, at 55–58, PageID # 308–11; R. 20-1, at 44, PageID # 193.

Travers filed this action in July 2012, seeking damages and claiming that the reason given for her firing was a pretext for FMLA discrimination and retaliation and disability discrimination. R. 29-1, at 29, PageID # 601; R. 1, at 5–6, PageID # 5–6. After Verizon objected to certain of Travers's discovery requests and Travers moved to compel discovery with respect to certain information, Verizon moved for summary judgment. R. 18-6, at 1–4, PageID # 119–22; R. 18-8, at 1–15, PageID # 130–44; R. 18, at 1, PageID # 60; R. 20, at 1–3, PageID # 147–49. The district court granted Verizon's motion for summary judgment and dismissed Travers's action. R. 60, at 1–10, PageID # 1380–89; R. 61, at 1, PageID # 1390. The district court determined that Travers received all the FMLA leave to which she was entitled, and that, although she may have created a factual issue to the extent that the June 3, 2010, document appears to state that violation of the attendance policy was the reason for her termination, Travers failed to show that Verizon's reason was false and was really a pretext for retaliation. R. 60, at 8, PageID # 1387. The district court found no genuine issue of material fact countering that Verizon based its decision on the particularized facts before it at the time, that decision makers at the time honestly believed that Travers had continued to waive mail-in rebates after being repeatedly disciplined for it, and that the author of the June 3, 2010, document was not a decision maker. R. 60, at 3–4, 6–7, PageID # 1382–83, 1385–86. The district court also dismissed Travers's ADA claim, because Travers had not shown that Verizon regarded her as disabled or that anything about an alleged disability led to her firing, and also Travers had not shown that Verizon's proffered reason for firing her was pretext for discrimination. R. 60, at 10, PageID # 1389. Travers appeals.

The district court properly granted summary judgment in favor of Verizon because Verizon granted all the FMLA leave to which Travers was entitled, and because Travers failed to show a genuine issue of material fact as to pretext. This court reviews the district court's grant of summary judgment *de novo*. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012).

Travers asserted both types of claims available under the FMLA: interference claims, pursuant to 29 U.S.C. § 2615(a)(1), "in which employers burden or outright deny substantive statutory rights to which their employees are entitled," and retaliation claims, pursuant to 29 U.S.C. § 2615(a)(2), "in which employers initiate adverse employment actions against employees for exercising their FMLA right to take leave." *Romans v. Mich. Dep't of Human Servs.,* 668 F.3d 826, 840 (6th Cir. 2012). Travers also asserted an ADA discrimination claim.

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, this court construes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**1. Travers's FMLA Interference Claim**

Summary judgment was appropriate on Travers's FMLA interference claim because Verizon granted all the FMLA leave to which Travers was entitled. "The FMLA entitles employees to an annual total of twelve weeks of leave for a number of reasons including, inter alia, because of a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Seeger*, 681 F.3d at 281 (quoting *Arban v. West*

*Publ'g Corp.,* 345 F.3d 390, 400 (6th Cir.2003) (quoting 29 U.S.C. § 2612(a)(1)(D))). 29 U.S.C. § 2615 prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under the subchapter outlining general requirements for leave. 29 U.S.C. § 2615(a)(1). To recover in an interference claim, Travers must establish that the employer denied the employee FMLA benefits to which she was entitled. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007). However, Travers received all the FMLA leave she requested. R. 20-7, at 3, PageID # 458; R. 20-1, at 54, PageID # 203. When an employee receives all of the FMLA leave she requested, the employee has not been denied a benefit to which she was entitled. *See Seeger*, 681 F.3d at 283 (citing *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)); *see also Culpepper v. BlueCross BlueShield of Tennessee, Inc.,* 321 F. App'x 491, 496 (6th Cir. 2009).

Travers argues that Verizon interfered with her FMLA benefits or rights by failing to provide her with a notification of her eligibility to take FMLA leave and failing to advise her of her rights under the FMLA at the appropriate time. Appellant's Br. at 38–40; *see* 29 C.F.R. § 825.300(b), (c). However, even if notice were considered a FMLA benefit the denial of which would constitute interference, Travers has not demonstrated that she was indeed denied proper notice. The record demonstrates that Travers received information on her FMLA eligibility, rights, and responsibilities well in advance of her health conditions: Travers received training on the FMLA during her new hire orientation, and she knew where to go (either a particular supervisor or a website) if she needed additional information. R. 20-1, at 26–28, PageID # 175–77; R. 20-2, at 4–5, PageID # 257–58; R. 20-4, at 5–8, PageID # 385–88. In addition, MetLife,

the third-party administrator who handles Verizon's FMLA requests, notified Travers of her FMLA rights and the relevant procedures in a letter sent one day after she had requested FMLA leave in November 2009, and soon after she requested additional FMLA leave in March 2010. R. 20-2, at 6–8, PageID # 259–61; R. 20-2, at 12, PageID # 265; R. 20-2, at 24–25, PageID # 277–78. Travers could not remember specifically whom at Verizon she allegedly told and when she told them about either her migraines or her heart condition, nor could she remember whether she told anyone at Verizon about her migraines prior to requesting FMLA leave in November. R. 20-1, at 4–11, 39, PageID # 153–60, 188; R. 29-1, at 7–11, PageID # 563.

Even if Travers had demonstrated a violation of § 2615, she would not be able to recover in an interference claim. 29 U.S.C.A. § 2617, which provides a cause of action against employers for § 2615 violations, "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Because Travers received all the FMLA leave that she requested (and thus was not denied benefits as a result of any alleged violation), Travers has not demonstrated prejudice. Accordingly, summary judgment in favor of Verizon was proper on Travers's interference claim.

## 2. Travers's FMLA Retaliation Claim

Summary judgment was appropriate on Travers's FMLA retaliation claim because she has failed to raise a genuine issue of material fact as to the existence of pretext. Employers may not "'discriminat[e] against employees . . . who have used FMLA leave,' nor can they 'use the taking of FMLA leave as a negative factor in employment actions.'" *Arban*, 345 F.3d at 403 (quoting 29 C.F.R. § 825.220(c)); 29 U.S.C.A. § 2615(a)(2). Even assuming Travers has

presented enough evidence to show a genuine issue of material fact as to whether the prima facie case has been established, an issue we do not reach, she has not met the subsequent burden with respect to pretext, and must therefore lose.[6]

Verizon has rebutted Travers's asserted prima facie case because it demonstrated a legitimate, non-discriminatory reason for its decision to terminate Travers—her repeated violations of the company's code of conduct, including proactively waiving mail-in rebates. R. 20-6, at 29–30, PageID # 453–54. If an employee establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). A defendant satisfies this burden if it produces evidence of "a legitimate nondiscriminatory reason" for its conduct. *Id.* Here, Verizon maintained meticulous records showing that Travers repeatedly violated the code of conduct, was warned and disciplined for such conduct prior to her FMLA leave, and continued to violate the code of conduct even after having received a final written warning. The triggering event on April 21, 2010, was Travers's fourth infraction regarding waiving rebates incorrectly. Verizon considered this infraction an integrity code of conduct violation, and Travers had already received both a written warning and a final warning for prior integrity violations (for proactively waiving mail-in rebates and inappropriate use of a Free Month promotional offer), with the final warning having been issued only the month before the triggering event. R. 29-3, at 2–3, PageID # 646–47. This court has previously held that evidence of a violation of work rules that would have supported dismissal provides a legitimate,

---

[6] Travers has not argued that the *McDonnell Douglas* framework is inapplicable, in light of *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 692-93 (6th Cir. 2009) (applying *Price Waterhouse* scheme).

non-discriminatory reason. *Romans*, 668 F.3d at 839; *see also Allen v. Butler Cnty. Comm'rs*, 331 F. App'x 389, 394 (6th Cir. 2009) (holding that "flex time" violations and failure to abide by a paid sick-leave call-in requirement were legitimate, non-discriminatory reasons for dismissal). Accordingly, Travers's repeated violations of the code of conduct were a legitimate non-discriminatory reason for her termination.

In response, Travers failed to show a genuine issue of material fact as to the existence of pretext—that is, that Verizon's reason was false and that the real reason for Travers's termination was FMLA retaliation. "At the pretext stage, we consider whether [the plaintiff] has adduced evidence which would enable a factfinder to conclude that [the defendant's] stated reason for terminating her is not the true reason and is simply a pretext for unlawful retaliation." *Bryson v. Regis Corp.,* 498 F.3d at 561, 572 (6th Cir. 2007). The plaintiff must always "produc[e] sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [ ] intentionally discriminated against him." *Seeger*, 681 F.3d at 285 (internal citations omitted). Travers has not cleared this hurdle. Travers seeks to show pretext with the following evidence: (1) the email attachment drafted by Haynes stating that "The decision to terminate Patricia's employment is supported by local HR. Specifically, Patricia violated the attendance policy;" (2) Gibson-Harris's comment to Travers at her termination meeting that "you've missed a lot of work" and "we need you here;" (3) the argument that Travers's offering instant rebates did not cause Verizon to lose money or garner additional benefit for Travers; and (4) the argument that Travers "adamantly denied" that she proactively offered an instant rebate and submitted the order as an online price match on April 21

and thus, she argues, the progressive discipline policy was not violated. Appellant's Br. at 31–34; R. 29-7, at 18, PageID # 812; R. 29-10, at 8, PageID # 865.

"A plaintiff can show that an employer's purported reason for taking an adverse employment action is pretextual if it (1) 'had no basis in fact,' (2) 'did not actually motivate the employer's action,' or (3) was 'insufficient to motivate the employer's action.'" *E.E.O.C. v. Ford Motor Co.*, 752 F.3d 634, 649 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 (6th Cir.2009)); *see also Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014); *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012); *Seeger*, 681 F.3d at 285. Travers does not specify under which method she seeks to demonstrate pretext, but because she takes issue with the factual basis of Verizon's reason and she suggests that attendance, not integrity, motivated her termination, her arguments appear to fall within the first and second theories of asserting pretext. However, Travers's arguments fail under both theories.

With respect to the first method of showing pretext—no basis in fact—Travers "adamantly denied she proactively offered an instant rebate [on the April 21, 2010 call] that gave rise to her termination." Appellant's Br. at 32. When the factual basis of the employer's proffered reason is challenged, the "honest belief rule" applies, and "[i]n deciding whether an employer reasonably relied on the particularized facts then before it . . . the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Verizon documented Travers's recurring practice of waiving rebates and improperly denoting them as price-match requests. Accordingly, the district court was correct in concluding that "the

decision-makers honestly believed that [Travers] had continued to waive mail-in rebates after being repeatedly disciplined for it." R. 60, at 7, PageID # 1386. It follows that Travers has not shown pretext based on a lack of factual basis.

Travers is also not able to establish pretext under the second method, which presumes the factual basis of the purported reason is true and that such grounds could motivate dismissal. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (quoting *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). With these presumptions in place, Travers must then "attack[] the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.'" *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (quoting *Manzer*, 29 F.3d at 1084). The detailed account of Travers's repeated conduct violations that is outlined in the termination request form compiled by Pratt, the performance supervisor for Travers's department, is strong evidence that the history of integrity violations was both the actual reason and a sufficient reason for Travers's termination. This account is corroborated by testimony from Verizon supervisors as well as the paper trail documenting Travers's disciplinary warnings throughout her time at Verizon. This lengthy documentation overshadows the one line of text contained in a standardized form and written by a human resources consultant, who was neither a decision maker nor a supervisor at Verizon and who was not involved in the decision to terminate Travers. Most importantly, the regional director of human resources approved the decision to terminate Travers based solely on the termination request form drafted by Pratt. R. 56-2, at 1–2, PageID # 1363–64. Moreover, Haynes's statement is not wholly inaccurate—

Travers *did* violate the attendance policy; in this way, Travers's record of absenteeism makes Haynes's claim that the note was a mistake even more plausible. In addition, when asked in her deposition if she had evidence to support her claim that she was fired because she took leave, Travers replied: "There were no recordings of it. I have no evidence." R. 29-1, at 54, PageID # 606.

The paper trail of disciplinary action also is not really contradicted by the alleged statement by Gibson-Harris. Even construing the record in the light most favorable to Travers, it is unclear whether this comment pertained to Travers's FMLA leave or her record of attendance violations in 2008, 2009, and in to 2010. Although nowhere else are her attendance violations mentioned as reasons for termination, the fact that this was another area in which she had been disciplined minimizes the likelihood that such a statement would be in reference to FMLA leave. Therefore, this evidence does not show that Verizon's reason for termination was not the true reason.

Lastly, whether or not Verizon suffered or Travers benefitted from her code of conduct violation does not change whether or not such violations warranted termination. After twice receiving a final written warning for code of conduct violations, it was a reasonable next step for Verizon management to initiate termination review, as is customary under its progressive disciplinary policy. On this record, no reasonable jury could find that it was more likely than not that Travers's code of conduct violations were a pretext for an illegal motive.

### 3. Travers's ADA Discrimination Claim

Travers's ADA discrimination claim cannot survive summary judgment because, even if she could establish a prima facie case of discrimination, Travers has failed to demonstrate pretext for the same reasons as for the FMLA retaliation claim. "[B]ecause a grant of summary judgment is reviewed *de novo,* [we] may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court." *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000). Therefore, we may affirm the district court's grant of summary judgment on the ground of failure to show pretext, even if the district court may have erred with respect to Travers's prima facie case.[7]

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[7] The EEOC argues that the district court erred in granting summary judgment on Travers's ADA discrimination claim because the court addressed whether Travers was disabled, even though Verizon mentioned in a footnote of its brief that it did not dispute Travers's prima facie case for the purposes of summary judgment. Amicus Br. at 14–18. However, "even when the district court fails to provide adequate notice to the party against whom summary judgment is granted, its judgment will be upheld unless the losing party can demonstrate prejudice." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013). Here, even if notice was inadequate on that particular point of reasoning, Travers is unable to demonstrate prejudice from the district court's decision on the issue of whether she was disabled becuase Travers's ADA claim would still fail at the pretext step in the *McDonnell-Douglas* burden-shifting analysis.