**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0129n.06

Case No. 19-3681

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 04, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ROBYN SMITH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| TOWNE PROPERTIES ASSET | ) | OHIO |
| MANAGEMENT COMPANY, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MERRITT, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. Mistakes happen. Including in the context of employment decisions. But not every mistake amounts to actionable employment discrimination. That's the lesson of this case, where Robyn Smith's employer fired her after it wrongly concluded that she had been stealing from one of the company's clients. Smith can't proceed on her discrimination and retaliation claims because there's insufficient evidence to show that her firing wasn't motivated by her employer's (mistaken) belief that she had been engaging in theft or dishonest acts. We affirm.

Smith used to work for Jack and Cynthia Brauer, who owned apartment complexes in Ohio. The Brauers eventually hired Towne Properties to manage those apartment complexes. At that point, Smith became a Towne employee, and she moved to a different facility. She worked there as a community manager and lived rent free.

Several years later, Smith was diagnosed with pseudotumor cerebri—a condition caused by spinal fluid pressure on the brain. The symptoms of pseudotumor cerebri, which mimic a brain tumor, include migraines, blurred vision, vertigo, and short-term memory loss (just to name a few). Because that condition made it difficult for Smith to perform her job, she took several absences under the Family and Medical Leave Act. Smith took those absences without incident.

But in July 2015, another Towne employee made some troubling allegations. This employee privately told Towne's management that Smith was coding her gas and electricity bills to vacant Fieldstone apartments (one of Towne's clients)—in effect, stealing thousands of dollars from Fieldstone. Then he accused Smith of sending her water bill to Fieldstone instead of paying it herself. And *then* he accused Smith of using two garages instead of one. After Towne investigated these allegations, Towne fired Smith for engaging in theft or dishonest acts.

As it turns out, Cindy Brauer believed Smith *was* entitled to free utilities back when she worked for them. And Towne found that out shortly after it fired Smith. But Towne didn't reconsider its decision to fire Smith.

So Smith sued Towne under the Americans with Disabilities Act and the Family and Medical Leave Act, alleging disability discrimination along with FMLA discrimination and interference. The district court granted summary judgment to Towne. This appeal followed.

*ADA Claim.* Smith claims that Towne violated the ADA by firing her based on her disability. But Towne insists that it fired Smith because she misappropriated utilities to the tune of about $14,000 and hadn't been paying for the parking garage.

To win on her claim, Smith must show (among other things) that Towne's explanation for firing her was pretext for disability discrimination. In other words, that the neutral explanation is simply cover for a discriminatory motive. Smith can't show a trialworthy dispute about pretext if

Towne honestly believed that she was misappropriating utilities even if that belief turned out to be mistaken. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 895 (6th Cir. 2016). So long as Towne made a "reasonably informed and considered decision" based on "particularized facts," then no reasonable juror could infer that the reason given for firing Smith was pretextual. *Babb v. Maryville Anesthesiologists, P.C.*, 942 F.3d 308, 322 (6th Cir. 2019) (cleaned up).

Towne did just that, as evidenced by multiple steps it took before firing Smith. First, Towne investigated whether Smith was paying for her utilities. One of Smith's supervisors helped review the electric bills. He also contacted the water company to verify that Smith's apartment wasn't generating a bill.

Second, multiple Towne employees called Jack Brauer to verify whether utilities were part of Smith's compensation package. One of Towne's management officers thought Jack might know about the utilities (Smith worked for Jack before transferring to Towne). But when a Towne employee called, Jack seemed "very surprised" and said he had no idea Smith wasn't paying utilities. Another one of Smith's supervisors also called Jack "to find out if he had approved payment of utilities" for Smith's apartment. R. 14, Pg. ID 559. Jack said that he hadn't.

Third, Towne looked for evidence showing that Smith was entitled to free utilities. Towne's accounting department searched for any documentation about Smith's utilities. But those efforts uncovered no evidence about free utilities. (And for what it's worth, Smith never claimed that there's any document memorializing her entitlement to free utilities. So it's not as though Towne did a shoddy investigation by overlooking a paper trail which might have disproved the allegations.)

What's more, all the written evidence that Towne found suggested utilities *weren't* part of Smith's compensation package. For example, Towne found a memo stating that Smith was

entitled to free rent—yet that memo never mentioned utilities. And during her employment, Smith requested a letter from Towne itemizing her compensation. That letter listed an apartment allowance but omitted any reference to utilities.

Fourth, Towne paid Fieldstone's owners thousands of dollars for Smith's unpaid utilities. That suggests Towne honestly believed that Smith had been effectively stealing from Fieldstone. After all, there would be no need for Towne to repay Fieldstone otherwise.

And finally, Towne found no evidence that Smith's use of the parking garage was authorized. Smith says that her use of the garage was part of her compensation, so she didn't need to pay. For support, she points to a ledger entry showing that she was receiving a $50 parking allowance. But there's no evidence that Towne ever approved such an allowance.

That pretty much takes care of the ADA claim because it shows Towne made an informed decision based on specific facts. *See, e.g.*, *Ferrari*, 826 F.3d at 897. But Smith makes one more point worth mentioning. She points out (correctly) that the honest-belief rule doesn't apply when the employer, in reaching its decision to terminate the employee, makes errors that are "too obvious to be unintentional." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012). That caveat makes sense: if the employer makes blatant mistakes in its investigation, then a juror reasonably could doubt whether the employer actually believes the reason or is just using it as cover for discrimination.

And here, Smith thinks that Towne made some errors that are too obvious to be accidental—and that Towne is *really* just covering up disability discrimination. Smith first points to the fact that Towne never asked her about the allegations. But an "optimal investigation—i.e., interviewing the employee and some or all of [her] witnesses—is not a prerequisite to application

of the honest belief rule." *Id.* at 286 (cleaned up). So not interviewing Smith doesn't amount to the sort of clear mistake that nixes the honest-belief rule.

Smith next claims that Towne made an obvious mistake that casts doubt on their honest belief because she *was* entitled to free utilities when she worked for the Brauers. Jack didn't tell Smith's supervisors about that arrangement because he forgot about it, she says—Jack suffered from Alzheimer's. But that argument misses the point. The honest-belief rule kicks in even when the reason for firing an employee turns out to be factually mistaken. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590–91 (6th Cir. 2014). When Towne decided to fire Smith—the only relevant time for measuring pretext—it had ample factual basis for concluding that Smith was effectively stealing from Towne's client. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (explaining that the honest-belief rule depends on the facts known "at the time the decision was made").

Nor does *Cehrs v. Northeast Ohio Alzheimer's Research Center* do Smith any good. 155 F.3d 775 (6th Cir. 1998). There, the employer fired its employee because it thought she didn't file certain forms for taking medical leave. *Id.* at 778. The court suggested that a juror could infer pretext in part because the employer didn't reconsider its decision to fire the employee when she reapplied for her position shortly after she was terminated. *Id.* at 784. That's not what happened here. There is no evidence that Smith ever asked for her job back—much less that she formally reapplied for her position as the plaintiff did in *Cehrs*. Towne's failure to reconsider its decision thus doesn't cast doubt about whether (at the time it fired her) Towne honestly believed Smith was stealing utilities. *See Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 336 (6th Cir. 2013) (finding *Cehrs* inapposite in part because the plaintiff "did not reapply for employment as Cehrs did").

Because of the honest-belief rule, Smith cannot show pretext on her ADA claim. So the district court did not err by granting Towne's motion for summary judgment.

*FMLA Claim.* Smith also argues that Towne retaliated against her for taking FMLA leave. But both parties agree, and case law confirms, that the honest-belief rule applies with as much force to Smith's FMLA claim. *See Seeger*, 681 F.3d at 282–87. Smith thus cannot win on her FMLA claim for the same reason she cannot win on her ADA claim—because she can't show pretext. *See, e.g.*, *Travers v. Cellco P'ship*, 579 F. App'x 409, 417–18 (6th Cir. 2014).

We affirm.