In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3942

Reginald Gilliam,

Plaintiff-Appellant,

v.

United Parcel Service, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:98CV0442RM--Robert L. Miller, Jr., Judge.

Submitted September 18, 2000--Decided November 29, 2000

   Before Easterbrook, Ripple, and Williams, Circuit
Judges.

   Easterbrook, Circuit Judge.  An employee who fails
to report to work for three consecutive days and
does not notify the company by the beginning of
the scheduled starting time on the third day is
in trouble under Article 16(d) of the collective
bargaining agreement between United Parcel
Service and the Teamsters Union. Reginald Gilliam
violated this rule and was fired. He took off
Friday, August 22, 1997, with the permission of
Allen Kinsey, his supervisor. Kinsey expected
Gilliam to return to work the next Monday;
Gilliam, however, thought that his leave had an
indefinite duration and did not try to get in
contact with Kinsey until the following Thursday
(and did not succeed until Friday, August 29).
Kinsey gave Gilliam the bad news: by failing to
call in by the start of his shift on Tuesday,
August 26 (the third working day of leave),
Gilliam had abandoned his job. This is an
understanding of the collective bargaining
agreement that Gilliam and the union might have
challenged--perhaps on the ground that by
granting leave Kinsey extended the notice period
to Wednesday or even later, depending on how much
leave Gilliam reasonably thought Kinsey had
authorized--but arbitration did not occur, and
Gilliam does not say that his union violated its
duty of fair representation. Like the district
court, therefore, we take it as established that
Article 16(d) entitled UPS to act as it did. We
must decide whether the application of this
collective bargaining agreement to Gilliam

violates the Family and Medical Leave Act, 29 U.S.C. sec.sec. 2601-54.

Gilliam took time off to be with his fiancee, Diana Nukes, after she delivered their child. The birth occurred on August 20, 1997, when Nukes was in her home town of Columbus, Ohio, and Gilliam was working in Elkhart, Indiana. Gilliam had known about the pregnancy since November 1996 but did not tell UPS that he wanted time off until the day after Nukes gave birth--although the collective bargaining agreement, which like the FMLA affords unpaid family leave, requires 10 days' notice. During work hours on August 21 Gilliam told Kinsey that he wanted leave to be with Nukes. Kinsey waived the 10-day notice rule and granted Gilliam's request. Gilliam told Kinsey that he would be back in a "couple" of days (or "a few" days; recollections differ). Kinsey understood this to mean a few calendar days. Gilliam did not get in touch with UPS for a week. By then it was too late, under UPS's understanding of the collective bargaining agreement. But Gilliam believes that the FMLA entitled him to stay away from work for up to 120 days without informing his employer when he would return.

The district court understood Gilliam's claim as one asserting that UPS had retaliated against him for using FMLA leave and deemed it insufficient under the framework that King v. Preferred Technical Group, 166 F.3d 887 (7th Cir. 1999), adopts for such claims. 1999 U.S. Dist. Lexis 21749, 5 Wage & Hour Cas. 2d 1853 (N.D. Ind. Oct. 13, 1999). Yet the thrust of Gilliam's claim is substantive; after all, UPS did not think that he had taken FMLA leave in the first place. He contends that the FMLA not only gave him an entitlement to time off (which he enjoyed) but also required UPS to take him back at the end of the leave. 29 U.S.C. sec.2614(a)(1)(A); Rice v. Sunrise Express, Inc., 209 F.3d 1008 (7th Cir. 2000); Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711 (7th Cir. 1997). Using the language of "retaliation" to analyze such a contention detracts attention from what matters. Diaz, 131 F.3d at 712-13. Still, for Gilliam the difference between substantive and retaliation approaches does not matter, because his core difficulty is one the district judge identified: the FMLA does not provide for leave on short notice when longer notice readily could have been given. Nor, we add, does it authorize employees on leave to keep their employers in the dark about when they will return.

Although the FMLA does not specify details such as how leave is sought, and on what notice, implementing regulations issued by the Department

of Labor fill the gap. One of these, 29 C.F.R. sec.825.302(a), provides that an employee must give 30 days' notice "if the need for the leave is foreseeable based on an expected birth" or other predictable event. That regulation fits Gilliam's situation to a T. He knew many months in advance when Nukes was likely to deliver their child. Although delivery dates vary around the nine-month norm, the need for family leave could be anticipated and notice given. Gilliam did not ask for leave until the day after his child's birth, however, and this entitled UPS to require Gilliam to wait 30 days longer. 29 C.F.R. sec.825.304(b). Kinsey did not do this--did not even insist that Gilliam wait out the 10 days required by the collective bargaining agreement. Gilliam says that by waiving the notice requirement UPS put him on FMLA leave. Neither employees nor employers need mention the FMLA by name. 29 C.F.R. sec.825.303(b). But it does not follow that all family leave must be under the FMLA unless the employer negates that possibility by imposing a 30-day delay. Perhaps Gilliam's leave was under the collective bargaining agreement; perhaps it was simply a humane step by a caring supervisor willing to bend the rules. Employees would not gain in the long run by converting all humanitarian leaves and discretionary acts into leaves governed by the strictures of the FMLA, for then employers would have powerful reasons to say no when requests like Gilliam's are made in the future.

Let us assume, however, that Kinsey's grant of permission to take a few days off put Gilliam on FMLA leave. What follows? He was not penalized for taking Friday off, for failing to report to work on Monday, or even for remaining with Nukes and their baby the rest of that week. Gilliam was fired because he did not call, by Tuesday morning, to tell UPS how long he would be away. Notice enables an employer to keep its business operating smoothly by bringing in substitutes or hiring temporary help. And if we were to treat Friday as a pre-authorized day postponing the notice requirement to Wednesday morning (though this would be a subject for a labor arbitrator, not a court), Gilliam did not meet that deadline either; he first tried to contact UPS on Thursday afternoon, and then only after learning that Kinsey was trying to locate him. "An employer may . . . require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. sec.825.302(d). One of those "usual and customary" requirements at UPS is that the employee let his supervisor know, no later than the beginning of the third working day of leave, how much more time will elapse before the employee returns to work. Although sec.825.302(d)

adds that an employer's rules may not be used to delay FMLA leave if the employee gives notice that is otherwise timely, this means only that an employer may not insist on more than 30 days' notice, which UPS did not do. Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans. Gilliam's discharge therefore did not violate federal law.

Affirmed