In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1641

LETECIA D. BROWN,

*Plantiff-Appellant,*

*v.*

AUTOMOTIVE COMPONENTS HOLDINGS, LLC,
and FORD MOTOR COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:06-cv-1802—**Richard L. Young**, *Chief Judge.*

ARGUED NOVEMBER 9, 2009—DECIDED SEPTEMBER 8, 2010

Before EVANS and SYKES, *Circuit Judges*, and
DER-YEGHIAYAN, *District Judge.**

SYKES, *Circuit Judge.* Letecia Brown, an assembly-line
worker at a Ford Motor Company plant in Indianapolis,

---

* The Honorable Samuel Der-Yeghiayan of the United States
District Court for the Northern District of Illinois, sitting by
designation.

was terminated for being absent from work without properly following Ford's leave policies and procedures. She filed suit for sex discrimination and retaliatory termination under Title VII and interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* The district court dismissed her sex-discrimination claim, and Brown voluntarily dismissed her retaliation claim, leaving only the FMLA claim before the district court. The court initially denied Ford's motion for summary judgment on this remaining claim, but Ford moved for reconsideration, noting a factual misunderstanding in the court's summary-judgment decision. The court agreed and reversed itself, entering summary judgment dismissing Brown's FMLA claim. Brown appealed.

We affirm. Brown's appeal addresses only the FMLA claim, and summary judgment in favor of Ford on that claim was entirely appropriate. The undisputed facts establish that Brown was absent without leave after failing to give proper FMLA notice for an extension of a previously requested leave period. Specifically, under the FMLA rules then in effect, Brown had two working days in which to give Ford notice that she intended to extend her leave, *see* 29 C.F.R. § 825.303(a) (2007), and she failed to do so. Further, an employer is entitled to adhere to its own leave policies and procedures when doing so does not otherwise violate the FMLA. Ford's termination of Brown's employment based on her non-compliance with its internal leave procedures did not violate the FMLA.

## I. Background

In December 1998 Brown started working for Ford at the Indianapolis Visteon Plant, where she held several different assembly-line positions. As an hourly employee, Brown was subject to the leave policies of the plant as modified by the Collective Bargaining Agreement ("CBA"). Under the terms of the CBA, an employee seeking medical leave must have a doctor fill out a form—called "Form 5166"—and return it to the plant's Medical Clinic by the date the leave is to expire.[1] If the employee fails to return the form on time, she will be "coded as AWOL."[2] An employee seeking an extension of medical leave will also be deemed AWOL if she does not return the form by the ending date of her initial period of leave.[3] In accordance with the CBA, once

[1]  Technically, the Clinic administers non-FMLA leave; employees seeking FMLA leave are to use a different procedure administered through the plant's Labor Relations office, which determines whether the employee is entitled to FMLA leave and whether the leave sought qualifies under the FMLA. Brown did not invoke the company's leave process for FMLA-qualifying leave, but we need not resolve any dispute on this issue for purposes of this appeal. Like the district court, we will give Brown the benefit of the doubt and treat her absence from work as qualifying FMLA leave.

[2]  Although the company's internal leave procedures do not spell it out, AWOL is an acronym commonly used for "absent without leave" or "absent without official leave."

[3]  The paperwork given to employees taking medical leaves of absence states in part:

(continued...)

an employee has gone AWOL, she is sent a five-day quit notice by registered mail. The quit notice states that the employee will be terminated unless within five working days she reports to work or explains in writing or by phone the reason for the absence. If the employee chooses to explain the absence over the phone, she must request a "call-in code number." Disputes regarding the procedural requirements of the quit notice are subject to the United Auto Workers' ("UAW") grievance procedures.

Brown went to the Clinic on August 11, 2006, to request medical leave and was given the Form 5166 leave form. Her primary-care physician, Dr. Joyce Bilby, faxed the completed form to the Clinic on August 21, stating that the reason for the leave was "stress." The form indicated that her "return to work date" was August 29; therefore, her leave was to expire on August 28. While Brown was on leave, Dr. Bilby referred her to Dr. James Shoot, a psychiatrist. However, the earliest appointment Brown could get with Dr. Shoot was August 29—the same day she was to return to work. To cover the one-day extension of her leave, Brown sent a

---

[3] (...continued)

> You must submit a completed 5166 to justify your medical condition prior to the ending date of your medical leave. *(This is also the case if an extension is required beyond the current ending date)*. If this is not done, your medical will be considered not justified & you will be coded as AWOL.

(Emphasis added.)

fax to Dr. Bilby's office on August 21, asking that additional paperwork be sent to the Clinic. She did not follow up, however, and the Clinic never received a leave form extending Brown's leave request through August 29.

Brown saw Dr. Shoot as scheduled on August 29, at which time she was diagnosed with depression. Dr. Shoot recommended that she rest and not return to work until September 16 and scheduled a follow-up appointment on September 11. Brown says that she called the Clinic on August 30 and spoke with Nurse Angela Diguilio. Ford has no record of this call. On Brown's version of events, she told Diguilio that her doctor had extended her leave to September 16, and the nurse said she would place a leave form at the Clinic for Brown to pick up.

Brown did not immediately do so, and because she had not submitted a Form 5166 extending her leave through August 29, her leave expired as scheduled on August 28. On August 31 Ford sent a quit notice to Brown via certified mail, informing her that she would be terminated unless she reported to work within five business days or provided proper verification of her illness. Brown's union representative also sent her a copy of the quit notice by certified mail on August 31. Brown did not pick up either of these letters until after she was terminated, though she admits she knew there was certified mail waiting for her at the post office.

On September 6 Brown went to the Clinic and spoke with Nurse Irene Rice. Brown showed Rice a hand-

written note from Dr. Shoot stating, "This person will require a medically excused absence from work until 9/16/06." Rice then gave her a leave form to fill out, and Brown left with the form and Dr. Shoot's note in hand. Brown also claims that she called the Clinic sometime after September 6 and spoke with a nurse. According to Brown, she informed the nurse that she could not return a completed leave form until September 11 because she was not going to see her doctor until then. She says the nurse told her to "[j]ust get the paperwork in as soon as possible."

Brown had her follow-up appointment with Dr. Shoot on September 11, and that same day she learned she had been terminated. On September 12 Brown faxed a completed leave form to the Clinic. The following day, September 13, the UAW filed a grievance on her behalf, but later withdrew it because Brown had not followed the plant's leave procedures. Brown then filed this suit against Ford, Automotive Components Holdings, LLC, and Visteon Corporation for sex discrimination and retaliatory discharge under Title VII and interference with her FMLA rights. The district court dismissed the sex-discrimination claim and also dismissed Visteon Corporation as a defendant.[3]

---

[3] Visteon Corporation is no longer a defendant in this action, although both parties list it as a Defendant/Appellee in their briefs. During the events at issue, Automotive Components Holdings, LLC, owned Ford's Indianapolis plant, having acquired it from Visteon in 2005. The district court dismissed

(continued...)

Responding to Ford's motion for summary judgment, Brown voluntarily dismissed her retaliation claim, leaving only the FMLA claim before the district court.

The court initially denied Ford's summary-judgment motion on this claim, finding material facts in dispute. The court assumed that Brown's leave was FMLA-qualifying, but held there were material facts in dispute regarding whether Brown had a serious medical condition and whether she had provided Ford with sufficient notice of her intent to take FMLA leave. The court also held, however, that Brown's August 30 phone call to Diguilio provided sufficient notice of her intent to extend her FMLA leave because it occurred within two working days of the expiration of her initial leave on August 28, as required by FMLA regulations.

Ford filed a motion for reconsideration, arguing that the court had committed a manifest error in calculating the two-day notice period for an extension of Brown's leave from August 28, the day Brown's initial leave was scheduled to expire. Ford pointed out to the court that the FMLA regulations in effect at that time provided that employees must give notice "within no more than one or two working days *of learning of the need for*

---

[3] (...continued)
Visteon from the case in an order dated November 1, 2007. Despite naming Visteon in the case caption of their briefs, both parties make clear that the only remaining defendants in this appeal are Ford and Automotive Components Holdings, LLC (collectively "Ford").

*leave*"—not within two working days of the *expiration* of leave.[4] 29 C.F.R. § 825.303(a) (2007) (emphasis added). Ford noted that Brown had learned on August 21 that she would need to extend her leave because her appointment with Dr. Shoot was on August 29, the day she was supposed to return to work. Even assuming that Brown had a qualifying medical condition and provided sufficient notice of her initial need for leave, Ford argued that the FMLA regulations required her to provide notice within two working days of August 21—not August 28, as assumed by the court—of her need for an extension. To the extent that the court had relied on Brown's August 30 phone call as a valid notice of an extension of her leave, Ford maintained that the denial of its motion for summary judgment was in error. The district court agreed and granted summary judgment in favor of Ford dismissing the FMLA claim. Brown appealed.

---

[4] The "within no more than one or two working days" language of § 825.303(a) was removed in 2009. The section now reads: "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." 29 C.F.R. § 825.303(a) (2009). We apply the regulations contemporaneous with the events in question, which in this case is the 2007 regulations. (The 2007 regulations came into effect June 31, 2006.)

## II. Discussion

We review the district court's grant of summary judgment de novo, construing all facts and inferences in favor of the nonmoving party. *Simpson v. Office of Chief Judge of Circuit Court*, 559 F.3d 706, 711-12 (7th Cir. 2009). The FMLA permits eligible employees to take 12 workweeks of leave within a 12-month period if a serious health condition renders them unable to perform their job function. 29 U.S.C. § 2612(a)(1)(D). To protect these rights, the FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]." *Id.* § 2615(a).

To prevail on an FMLA-interference claim, an employee must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). For an extension of unforeseeable FMLA leave, as is the case here, the regulations in effect at the time state in relevant part:

> When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer *within no more than one or two working days of learning of the need for leave,*

except in extraordinary circumstances where such notice is not feasible.

29 C.F.R. § 825.303(a) (2007) (emphasis added).

The district court was right to correct itself and grant summary judgment in favor of Ford based on this regulation and the undisputed facts about when Brown learned of her need to extend her leave. The court's first ruling improperly calculated the triggering date for notice to extend FMLA leave as August 28—the day Brown's initial leave was to expire. But the regulations are clear that notice of an unforeseeable need for leave—including an unforeseeable extension of medical leave—must be given within two working days of "learning of the need for leave," *id.*, not two working days of the expiration of leave. The correct triggering date here was therefore August 21—the day Brown learned she would need to extend her leave because she had a doctor's appointment on August 29, the day she was scheduled to return to work. By not contacting Ford within two working days of August 21, Brown failed to provide notice of her need to take FMLA leave, or in this case, to extend her FMLA leave. In fact, Brown did not contact Ford until August 30, which was well outside of the two-day window calculated from August 21. Without the appropriate notice under the FMLA regulations, Brown failed to make out a prima facie case of FMLA interference.

Though we could end our analysis here, we note for completeness that Ford was well within its rights (at least for FMLA purposes) to terminate Brown's employ-

ment according to its standard leave procedures. FMLA regulations specifically provide that an employer may require employees "to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." *Id.* § 825.302(d); *see Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 972 (7th Cir. 2000) ("Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans."). In *Gilliam* we held that an employer does not violate the FMLA by terminating an employee who fails to follow the notice provisions of a collective-bargaining agreement. 233 F.3d at 971. The plaintiff in that case had requested leave for one day to see his fiancée and newborn child, and his employer granted the request. *Id.* at 970. But he did not contact his employer again until five days later. *Id.* He was then fired for violating the employer's notice procedures for leaves of absence, which required anyone who failed to report to work for three consecutive days to notify the company before starting time on the third day. *Id.*; *see also Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (no FMLA violation where employee was terminated for failure to comply with company's attendance policy). We observed in *Gilliam* that the FMLA does not "authorize employees on leave to keep their employers in the dark about when they will return." *Gilliam*, 233 F.3d at 971.

Here, just as in *Gilliam*, Brown was terminated for being AWOL after failing to comply with the notice

procedures specified in the CBA. Specifically, Brown was sent a quit notice on August 31, and she failed to comply with that notice's requirements that she either report to work or explain her absence in person or by phone within five days.[5] Brown did not even pick up the quit notice until September 12—the day after she was fired pursuant to the terms of the CBA. When Brown did not report to work on August 29 as contemplated by the only proper leave request form the company had on file for her, Ford was entitled to proceed with its normal AWOL procedures, including the five-day quit notice. Her termination in accordance with these procedures is not in any way an interference with her FMLA rights.

Brown raises three new arguments in this court to overturn the district court's ruling. Arguments not raised in the district court are considered waived on appeal, *see Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008), but Brown's

---

[5] Ford deemed Brown's alleged phone call on August 30 to be insufficient because she did not receive a "call-in code number" per normal leave procedures. Whether Brown's August 30 phone call was sufficient to satisfy Ford's notice requirements is a question for a labor arbitrator and does not affect our analysis of the FMLA claim. *See Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir. 2000) (noting that the interpretation of the details of a company's internal leave procedures is a "subject for a labor arbitrator, not a court"). As we have noted, Brown's union has withdrawn a grievance on her behalf.

new arguments would fail even if they had not been waived. She contends that she complied with the FMLA regulations because she provided notice for her FMLA leave extension "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (2007). This ignores that the regulations specifically contemplate that in the ordinary case, notice will be given "within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id.* Brown has not established that it was impracticable or infeasible to give notice within two working days of August 21, and whether she subjectively believed it was "more practicable" to wait until August 30 to notify Ford of her need for an extension is beside the point.[6]

Second, Brown argues that Ford's five-day quit notice was an explicit waiver of its right to rely on the "one or two working days" notice provision of the FMLA. For support Brown points to a provision in the regulations explaining that "[a]n employer may waive employees' FMLA notice obligations or the employer's own internal rules on leave notice requirements." *Id.* § 825.304(a). The employer's establishment of internal notice procedures,

---

[6] We also reject the assertion that Brown did not know on August 21 that she would need additional leave. Her leave form clearly indicated that her return to work date was August 29. Brown knew as of August 21 that she could not get an appointment with Dr. Shoot until August 29, necessitating an extension of at least a day.

however, does not operate as an automatic waiver of FMLA notice obligations. To the contrary, the regulations expressly permit employers to require compliance with their "usual and customary notice and procedural requirements for requesting leave," *id.* § 825.302(d), and our circuit has recognized an employer's right to terminate employees on this basis, *see Lewis*, 278 F.3d at 710; *Gilliam*, 233 F.3d at 971. That Ford's internal procedures gave Brown a five-day grace period before termination has no effect on FMLA notice requirements.

We also reject Brown's related argument that by failing to terminate her immediately on the day she went AWOL (August 29), Ford waived its right to rely on the FMLA provisions governing notice. As we have already explained, nothing in the FMLA prevented Ford from using its own internal leave procedures, and under the CBA Ford could not fire Brown immediately as of August 29. The CBA's quit-notice process entitled her to five days' notice and an opportunity to either return to work or provide proper notice of her leave within that grace period. Only noncompliance at the end of that period was grounds for termination under the CBA.

Finally, Brown argues that her August 30 phone call to Nurse Diguilio was a request for a *new* FMLA leave, rather than an extension of her initial FMLA leave. Under this theory she would have had 15 days to provide Ford with medical certification of the need for the leave, *see* 29 C.F.R. § 825.308(d) (2007), and she believes that she complied with this requirement by faxing the

completed leave form to the Clinic on September 12. Brown does not explain, however, why the August 30 phone call should be construed as a request for new leave as opposed to an extension of her initial leave. She did not return to work at the end of her initial leave period and was in fact suffering from the same medical condition that kept her out of work in the first place. In any event, whether we characterize the additional leave as an "extension" or as a "second" leave, the result is the same. In each case Brown needed to comply with the FMLA regulations, which required her to give notice within two working days of learning of the need for leave. Labeling it as "second" leave does not change the fact that the triggering date for FMLA notice was August 21, and Brown failed to notify Ford within two working days of that date.

AFFIRMED.