BAUER, Circuit Judge.
Plaintiff-appellant, Alma Glisson (“Appellant”), sued Correctional Medical Services, Inc., also known as Corizon, Inc. (“CMS”), its employees Dr. Malaka G. Hermina (“Dr. Hermina”), Mary Combs, R.N. (“Nurse Combs”), and the Indiana Department of Corrections (“IDOC”) (collectively “Appellees”), on behalf of her deceased son, Nicholas Glisson (“Glisson”). Glisson died while incarcerated at Plain-field Correctional Facility (“Plainfield”) in Plainfield, Indiana. The lawsuit’s federal claims arise under 42 U.S.C. § 1983 (“§ 1983”), specifically alleging that Appel-lees did not offer Glisson constitutionally adequate medical care, and that this failure violated his Eighth Amendment rights against cruel and unusual punishment. The district court granted summary judgment in favor of Appellees on all federal claims, and remanded the remaining state law claims. Appellant now only appeals the grant of summary judgment in favor of CMS, arguing that CMS’s failure to implement a particular IDOC Health Care Service Directive (the “Directive”) violated Glisson’s Eighth Amendment rights. However, because Appellant has not produced legally sufficient evidence to demonstrate a genuine issue of material fact on this matter, we affirm summary judgment for CMS.
I. BACKGROUND
Glisson’s medical history is tragic. Diagnosed with laryngeal cancer in 2003, he underwent surgery that removed his larynx and part of his pharynx. The surgery also removed portions of Glisson’s mandible and thirteen teeth. The surgery left him with a permanent stoma, or opening in his throat, accompanied by a tracheostomy tube. He was later fitted with a voice prosthesis, and received postoperative radiation treatment. After the surgery, he suffered from painful swallowing (dyspha-gia) and neck pain; both resulting from progressive neck instability. In 2008, doctors inserted a gastrojejunostomy tube (“G-tube”) through his stomach to help with nutrition. In March 2010, a cancerous lesion was found on his tongue, but was successfully excised.
Exacerbating the effects of Glisson’s cancer and surgery were ongoing memory issues, hypothyroidism, depression, smoking, and alcohol abuse. Despite these many health issues, Glisson lived independently and cared for himself; he even cared for his grandmother when she was sick and his brother when he was dying.
On August 31, 2010, Glisson was sentenced to incarceration for dealing in a controlled substance. He came into the custody of IDOC on September 3, 2010. IDOC housed him in its Reception Diagnostic Center from September 3 through September 17. During this time, CMS medical personnel noted spikes in Glisson’s blood pressure, an occasional ■ low pulse, and low oxygen saturation level. He also demonstrated signs of confusion and anger, and was at one point deemed a suicide risk. As a result, IDOC placed him in segregation and had him undergo a psychiatric evaluation.
IDOC transferred him from the Reception Diagnostic Center to Plainfield on September 17. At Plainfield, Glisson’s condition further deteriorated. At Plain-field, he came under the medical care of Dr. Hermina and Nurse Combs. Plain-field personnel quickly determined that Glisson’s medical issues were worsening. On September 29, he presented with symptoms suggesting acute renal failure. In response, IDOC personnel transferred *665 him to a local hospital, where he remained until October 7.
Upon returning to Plainfield, Glisson appeared stable. However, on the morning of October 10, Nurse Combs witnessed Glisson exhibiting strange behavior and transferred him to a medical isolation room. While isolated, Glisson was restless, moving from one side of the bed to the other. At 8:20 a.m., IDOC staff reported that Glisson was sitting upright in his bed, unresponsive. Emergency personnel arrived at 8:30 a.m., and pronounced Glisson dead at 8:35 a.m. The coroner concluded that Glisson died of natural causes, resulting from complications of laryngeal cancer with contributory renal failure. A pathologist agreed with these findings, and added that Glisson’s various medical issues — diminished mental state, oxygen deficiency, and acute renal failure — were directly attributable to his throat cancer and laryngectomy.
After Glisson’s death, Appellant sued Appellees in Indiana state court. She alleged that Dr. Hermina and Nurse Combs were deliberately indifferent to Glisson’s medical needs. She also alleged, under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny, that CMS’s failure to implement the Directive led to this deliberate indifference. The Directive reads:
Each facility must develop a site[-]specific directive that guides the management of the chronic disease management and clinics. Each site must have easily available a compilation of instructions for proper management [of] chronic diseases in the chronic disease clinic setting.
Related IDOC guidelines further note that the Directive is necessary because “Offenders with serious chronic health conditions need to receive planned care in a continuous fashion” and that care provided to such inmates “should be organized and planned and should be consistent across [IDOC] facility lines.”
CMS has argued throughout the litigation that it is not obligated to implement IDOC directives. It also admitted that it did not implement the Directive, stating instead that Glisson’s care was “based on standards of medical and nursing care.” CMS acknowledged that while IDOC “implements Health Care Service Directives ... generally none of those directives were relied on in rendering medical care and treatment to Mr. Glisson.”
Appellant claims that because CMS did not adopt the Directive and did not create a centralized treatment plan for Glisson, his care was fractured and disorganized. She argues that CMS’s lack of a policy of centralized care for inmates like Glisson led to the deliberate indifference of Dr. Hermina, Nurse Combs, and other CMS personnel. She specifically argues that CMS’s failure to adopt any policy mandating coordinated care “prevented] [CMS] medical personnel from communicating properly and ensuring appropriate continuity of care for inmates with serious medical problems,” such as Glisson.
After Appellant filed the suit in Indiana court, Appellees removed the case to federal court, and then moved for summary judgment on the federal law claims. The district court granted summary judgment for Appellees, and remanded the remaining state law claims. In granting summary judgment, the district court found that Dr. Hermina’s and Nurse Combs’s actions did not constitute deliberate indifference, and that as a result Glisson did not suffer any constitutional injury. Having determined that Glisson suffered no constitutional injury, the district court then held that Appellant could not prove a *666 Monell claim against CMS as a matter of law.
Appellant appealed the district court’s order.
II. DISCUSSION
Appellant only appeals the dismissal of her Monell claim against CMS. But this claim fails for want of necessary evidence. Specifically, Appellant has not presented evidence that CMS’s failure to implement the Directive led to a widespread practice of deliberate indifference against not only Glisson, but other inmates as well.
We review the grant of summary judgment de novo, construing the facts in the light most favorable to the nonmoving party—here, Appellant. Rahn v. Bd. of Trustees of N. Ill. Univ., 803 F.3d 285, 287 (7th Cir.2015) (citation omitted). Summary judgment is appropriate when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Lalowski v. City of Des Plaines, 789 F.3d 784, 787 (7th Cir.2015). That is, at this stage, Appellant must have produced evidence that indicates a genuine issue of material fact. See Armato v. Grounds, 766 F.3d 713, 719 (7th Cir.2014) (quotations and citations omitted). See also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e) in holding that non-moving party must “designate ‘specific facts showing that there is a genuine issue for trial’ ”).
Here, Appellant must produce evidence that CMS’s failure to adopt the Directive led to deliberately indifferent medical care by CMS personnel. Government entities[1] “have an affirmative duty to provide medical care to their inmates.” Duckworth v. Ahmad, 532 F.3d 675, 678-79 (7th Cir.2008) (citing Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Deliberate indifference to a prisoner’s “serious medical needs ... constitutes the ‘unnecessary and wanton infliction of pain’ and violates the Eighth Amendment’s prohibition against cruel and unusual punishments.” Duckworth, 532 F.3d at 679 (quoting Estelle, 429 U.S. at 104, 97 S.Ct. 285 (internal quotation and citation omitted)).
Here, Appellant has not produced the necessary evidence for a Monell claim against CMS. Private corporations like CMS cannot be liable in a § 1983 suit under respondeat superior.[2] E.g., Iskander, 690 F.2d at 128; Gayton v. McCoy, 593 F.3d 610, 622 (7th Cir.2010); Maniscalco v. Simon, 712 F.3d 1139, 1145 (7th Cir.2013). Thus, even if Dr. Hermina and Nurse Combs were deliberately indifferent to Glisson’s medical needs, a court cannot impute this liability to their employer, CMS. Rather, to survive summary judgment, Appellant must produce evidence of “the existence of an ‘official policy’ or other governmental custom that not only causes *667 but is the ‘moving force’ behind the deprivation of constitutional rights.” Teesdale v. City of Chi., 690 F.3d 829, 833-34 (7th Cir.2012) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). See also Monell, 436 U.S. at 694, 98 S.Ct. 2018.
Further, where a plaintiff alleges that a lack of a policy caused a constitutional violation, she must produce “more evidence than a single incident to establish liability.” Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir.2005) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 822-23, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). She must produce evidence of a “series of incidents” (Hahn v. Walsh, 762 F.3d 617, 638 (7th Cir.2014), cert. denied, — U.S.—, 135 S.Ct. 1419, 191 L.Ed.2d 365 (2015)), or a “widespread practice constituting custom and usage.” Phelan v. Cook Cnty., 463 F.3d 773, 789 (7th Cir.2006) (a “widespread practice” argument “would focus on the application of the policy to many different individuals”). Evidence of a series of incidents permits the inference that “there is a true municipal policy at issue,” and allows the factfinder “to understand what the omission means.” Calhoun, 408 F.3d at 380. By presenting a series of incidents where “the same problem has arisen many times and the [government entity] has acquiesced in the outcome,” a plaintiff has produced sufficient evidence that the lack of policy is in fact a de facto policy choice, not a discrete omission. Id. However, “[w]ithout evidence that a series of incidents brought the risk at issue to the attention of the policymaker, we cannot infer that the lack of a policy is the result of deliberate indifference.” Hahn, 762 F.3d at 637-38 (citing Calhoun, 408 F.3d at 380).
Such is the case here. Appellant alleges that CMS failed to implement the Directive mandating a centralized care plan for inmates such as Glisson. Appellant therefore argues that CMS’s lack of a policy was the “moving force” behind any deliberate indifference to Glisson’s medical needs. Thus, to show that CMS’s failure to implement the Directive amounted to a de facto policy, Appellant must have produced evidence that CMS staff had been deliberately indifferent to other inmates, and that a widespread practice of deliberate indifference flowed from the failure to implement the Directive. But Appellant has not done so. Instead, she has only produced evidence of alleged deliberate indifference towards Glisson, and admitted as much at oral argument.[3] This evidence alone is insufficient to maintain a Monell claim against CMS. Absent evidence of a series of incidents or a widespread practice *668 against other inmates, we cannot infer that CMS’s failure to implement the Directive was the result of deliberate indifference. See Hahn, 762 F.3d at 637. Therefore, Appellant’s claim fails as a matter of law, and summary judgment for CMS was appropriate.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the judgment of the district court.

. Though a private corporation, CMS concedes that because it performs a government function—providing medical care to state prisoners—it may be liable as a government entity under § 1983. E.g., Iskander v. Vill. of Forest Park, 690 F.2d 126, 128 (7th Cir.1982).

. Additionally, though CMS did not argue waiver on appeal, Appellant has nevertheless waived her right to recovery on a theory of respondeat superior. In the district court, she stated in her response to Defendants’ Motion for Summary Judgment, “Plaintiff does not seek to impose liability on CMS under § 1983 based on respondeat superior." Yet Appellant now asks this Court to apply respondeat superior to private corporations like CMS. This is a new argument on appeal, and is thus waived. See Brown v. Automotive Components Holdings, LLC, 622 F.3d 685, 691 (7th Cir.2010) (“[arguments not raised in the district court are considered waived on appeal’’).

. Appellant waived use of evidence of other incidents because she did not present such evidence before the district court. Her "Separate Appendix” includes a 2013 Miami Herald news article discussing various lawsuits brought by Florida prisoners against CMS (as Corizon), a 2012 expert report relating to a lawsuit against Corizon brought in federal court in Idaho, and a 2015 settlement order related to a lawsuit against Corizon in the Northern District of California. She argues in her appellate brief that this is evidence of a "pattern of constitutionally inadequate care.” But she presented none of these three documents as evidence before the district court. Of course, she could not have presented the 2015 settlement order to the district court in this case, because the district court in this case ruled on summary judgment on June 4, 2014. However, the district court presiding over the Northern District of California settlement had denied summary judgment to Cori-zon on April 14, 2014, before the district court in this case ruled. See M.H. v. Cnty. of Alameda, 62 F.Supp.3d 1049, 1087-88 (N.D.Cal.2014). Thus, Appellant could have offered the denial of summary judgment in M.H. as supplemental authority for her argument before the district court. But she failed to do so, and has thus waived any argument relating to these three documents. See Brown, 622 F.3d at 691.