Filed 4/20/21  Reyes v. Ralphs Grocery CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CARLOS REYES,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>RALPHS GROCERY COMPANY et al.,<br><br>        Defendants and Respondents. | B297149<br><br>(Los Angeles County Super. Ct. No. BC639129) |

APPEAL from orders of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Law Office of David R. Denis and David R. Denis for Plaintiff and Appellant.

Baker & Hostetler, Nancy Inesta and Joseph S. Persoff, for Defendants and Respondents.

Plaintiff Carlos Reyes (Plaintiff) sued his former employer, Ralph's Grocery Company (RGC), and its parent company after he was fired for accruing too many points under RGC's policies on missing work, which generally require employees to provide at least an hour's notice if they will be absent or late. The primary thrust of Plaintiff's lawsuit is that he was terminated not because of his noncompliance with the policies but because of his disability (asthma) and his age. The trial court granted summary judgment for RGC and its parent company (collectively, Defendants). We consider whether Plaintiff raised an issue of material fact requiring trial as to four of his causes of action: disability discrimination, age discrimination, failure to provide a reasonable accommodation, and failure to engage in the interactive process to determine a reasonable disability accommodation.[1]

---

[1] Plaintiff's complaint alleged nine causes of action, including, other than those just mentioned, claims for harassment, retaliation, failure to prevent discrimination and retaliation, violation of the California Family Rights Act (CFRA), and wrongful termination in violation of public policy. The parties agree the failure to prevent discrimination and wrongful termination claims rise and fall with the viability of his other causes of action. Plaintiff does not adequately challenge the trial court's ruling on the retaliation, harassment, and violation of CFRA causes of action (except perhaps insofar as he argues Defendants' absence and leave policies are unlawful, a point we will address). We accordingly do not discuss these other claims. (*Cahill v. San Diego Gas & Elec.* (2011) 194 Cal.App.4th 939, 956 [""When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"""].)

# I. BACKGROUND

In 1986, Plaintiff began working for RGC at one of its distribution centers. For most of his employment with RGC, Plaintiff worked as a forklift driver and receiver. Plaintiff also suffers from asthma. Beginning in 2005, pursuant to the federal Family and Medical Leave Act (29 U.S.C. § 2601 et seq.) (FMLA) and its California counterpart the CFRA (Gov. Code, § 12945.1 et seq.), Plaintiff began requesting and receiving intermittent FMLA/CFRA time off from work due to his asthma.

## A. RGC's Policies on Missing Work

In 2013, RGC implemented a call-in procedure that required employees (including Plaintiff) to call an attendance hotline to report an absence or late arrival at work at least one hour before the employee's scheduled start time. Plaintiff received a copy of the policy, read it, understood it, and signed a form acknowledging he had been given a card with the hotline's phone number. From his review of the policy, Plaintiff understood he was required to call the hotline even if his absence or late arrival was unrelated to the FMLA or CFRA. Between February 2014 and April 2015, Plaintiff used the hotline 42 times to report an absence or late arrival.

Five months after implementing the call-in policy, RGC instituted a points-based attendance policy. Pursuant to this policy, employees (including Plaintiff) would be assessed points on a rolling 12-month basis for late arrivals, early departures, and absences unrelated to protected leave. As an employee garnered points under the policy, he or she would be subject to progressively greater discipline: counseling at 4 points, a verbal warning at 6 points; a written warning at 8 points, another

3

written warning and a 5-day unpaid suspension at 10 points, and automatic termination at 12 points.

As with the call-in policy, the attendance policy was provided to Plaintiff and he acknowledged in writing that he read and understood it. After the attendance policy went into effect, Plaintiff steadily accumulated points and was subjected to increasing discipline, including a total of four written warnings between April 2014 and February 2015 (and a five-day suspension with a written warning issued in February 2015). Plaintiff did not request an accommodation to comply with the call-in policy at any point during this period of progressive discipline.

### B. Plaintiff's Termination

On March 29, 2015, a little over a month after he was suspended without pay for five days for accumulating 10 points, Plaintiff did not report to work and did not call in to advise he would be absent. The points Plaintiff received for this "no call, no show" on March 29 were sufficient to trigger the attendance policy's termination threshold.[2]

Once Plaintiff met the threshold for termination, RGC suspended him while one of its senior labor relations

---

[2] Defendants initially calculated Plaintiff's point total for the rolling 12-month period up to March 29, 2015, at 12.5 points, i.e., half a point above the termination threshold. Defendants would later concede, however, that Plaintiff had been incorrectly assessed a half a point on February 9, 2015, for a late arrival that he had in fact reported in an advance call-in. The half-point error, however, does not affect whether Plaintiff was subject to termination under the attendance policy.

4

representatives, Monique DeGuia-Jones (DeGuia-Jones), investigated the matter and reviewed Plaintiff's work record. A manager at the distribution center told DeGuia-Jones that Plaintiff was never approved to take March 29 off; instead, Plaintiff "simply made an assumption that he had the day off and did not check his schedule."[3] Plaintiff's union representative told DeGuia-Jones that Plaintiff failed to appear on March 29 because he forgot to check his work schedule.

In view of Plaintiff's work record that showed, among other things, a history of warnings for "attendance and/or tardiness," DeGuia-Jones recommended Plaintiff be terminated. At a subsequent grievance meeting, Plaintiff's union representative described his unreported absence on March 29 as a "bonehead" mistake. Plaintiff did not claim, at this meeting, that RGC's past and proposed discipline of him was attributable to unlawful discrimination, nor did he assert RGC failed to accommodate Plaintiff's medical condition or miscalculated his attendance points. Following the grievance hearing, DeGuia-Jones upheld Plaintiff's termination.

C.     *Plaintiff's Lawsuit, and Summary Judgment for Defendants*

Plaintiff sued Defendants after he was terminated. As relevant for our purposes, Plaintiff alleged causes of action for disability and age discrimination in violation of the Fair

---

[3]     Plaintiff had requested the following day, March 30, as a vacation day.

Employment and Housing Act (FEHA) (Gov. Code,[4] § 12900 et seq.), failure to accommodate a disability as required by FEHA, and failure to engage in the interactive process as required by FEHA.

Defendants moved for summary judgment or, in the alternative, summary adjudication. Defendants argued they were entitled to judgment on the discrimination causes of action because Plaintiff was fired for a legitimate, nondiscriminatory reason, namely his repeated violations of the call-in policy, which resulted in termination pursuant to the terms of the attendance policy. Defendants also maintained there was no evidence to support Plaintiff's causes of action for failure to participate in the interactive process or failure to accommodate. Defendants emphasized that throughout Plaintiff's employment they had accommodated Plaintiff's asthma through his FMLA requests for time off from work and continued to do so after the call-in and attendance polices were put in place.

Plaintiff opposed the motion for summary judgment. With regard to his disability discrimination claim, Plaintiff contended the call-in and attendance polices were overly burdensome and violative of the FMLA and its implementing regulations. Plaintiff also argued that even if the policies were legally permissible, his termination was nonetheless improper as he had not actually accumulated sufficient points for termination. Plaintiff in particular focused on RGC's assessment of one point for a late arrival on February 5, 2015 (in addition to the aforementioned half-point on February 9, 2015, that RGC agreed

---

[4]     Undesignated statutory references that follow are to the Government Code.

was incorrectly assessed). Plaintiff conceded he did not file any grievances at the time the contested points were awarded, and as for the point assessed for a violation of the call-in policy on February 5, 2015, Plaintiff did not dispute the call logs for RGC's attendance hotline did not reflect a late arrival call-in notice from him (he testified at his deposition that he could not remember if he called the hotline that day).

In connection with his age discrimination claim, Plaintiff conceded no one working for RGC had ever commented on his age and admitted that he could not recall ever complaining about age discrimination prior to his termination. But relying on a declaration submitted by another former RGC employee Ricky Wasp (Wasp), Plaintiff argued RGC had a practice of terminating older, higher-paid employees and replacing them with younger, lower-paid employees.[5]

Wasp's two-page declaration averred he could not recall a single instance when a "terminated employee who was or appeared to be older than 40 years old was ever replaced with someone who was or appeared to be older than 40 years old." Wasp, however, did not identify by name or job title any of the other employees who appeared to him to have been terminated for age-related reasons and he conceded he was "unsure" why other employees had been terminated. Wasp did not offer any details about the worker who filled Plaintiff's position other than he was a man who "appeared to be in his late 20s to early 30s."

---

[5] Wasp, who had also sued Defendants for age discrimination, worked at the same warehouse as Plaintiff during the same time period and he was terminated, at age 60, several months after Plaintiff—also for a "no call, no show."

Finally, Wasp acknowledged he did not have any direct knowledge that he himself was replaced by a significantly younger worker; he had only heard from a former co-worker that this was so.

As for Plaintiff's claims of a failure to accommodate a disability and to participate in the interactive process, Plaintiff had already admitted at his deposition that he never requested an accommodation from RGC other than FMLA leave in accordance with the call-in and attendance polices. Accordingly, Plaintiff opposed Defendants' motion on these causes of action by arguing those polices were "draconian," illegal under the FMLA, and could not be considered reasonable accommodations.

The trial court held a hearing to consider the arguments of counsel and later issued an order granting summary judgment for Defendants.[6] With respect to Plaintiff's disability

---

[6] The trial court prepared a tentative ruling for the summary judgment hearing that reached a bottom line significantly more favorable for Plaintiff. Plaintiff relies heavily on the court's tentative ruling in his briefing on appeal even though the court did not adopt the tentative as its final ruling. That reliance gets Plaintiff nowhere, as we are unconcerned with the court's tentative ruling. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646-647 ["'[A] court is not bound by its statement of intended decision and may enter a wholly different judgment than that announced.' [Citation.] 'Neither an oral expression nor a written opinion can restrict the power of the judge to declare his [or her] final conclusion in his [or her] findings of fact and conclusions of law. [Citation.] The findings and conclusions constitute the final decision of the court and an oral or written opinion cannot be resorted to for the purpose of impeaching or gainsaying the findings and judgment'"]; accord, *Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1363, fn. 3 [following "the

8

discrimination cause of action, the court found RGC's call-in and attendance polices permissible under FMLA and a legitimate, nondiscriminatory basis for firing Plaintiff. The court also found Plaintiff did not produce any evidence RGC's stated reason for firing him (his accrual of termination of points under the attendance policy) was actually a pretext for discriminatory animus. As to Plaintiff's age discrimination claim, the court found "there was no evidence to indicate that age played any factor in Defendants' decision to terminate him." Finally, as to Defendants' interrelated causes of action for failure to engage in the interactive process and to provide a reasonable disability accommodation, the court found Defendants had no duty to engage in the interactive process because Plaintiff "did not need, . . . [or] ask for, a change in his working conditions. As Plaintiff himself states, he had asthma for years, and had been using FMLA leave as a buffer during that period."

## II. DISCUSSION

We have no difficulty concluding the trial court's summary judgment ruling is correct. RGC's call-in and attendance policies are not unlawful under FMLA or its implementing regulations. Plaintiff produced no substantial evidence RGC's stated legitimate, nondiscriminatory reason for firing him—repeated failures to comply with the call-in policy and unexcused absences from work—was a mere pretext for disability or age discrimination. And as for the summary adjudication of the two remaining causes of action challenged on appeal, Plaintiff

general rule that written orders supersede tentative decisions" and disregarding the trial court's tentative ruling].)

9

presented no evidence he ever requested an accommodation other than FMLA leave, which dooms both the reasonable accommodation claim and the interactive process claim.

### A. Summary Adjudication of the Discrimination Causes of Action Was Proper

A defendant employer may seek summary judgment on an employee's discrimination claim by presenting "competent, admissible evidence" that the defendant took action against the plaintiff for a legitimate, nondiscriminatory reason. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357 (*Guz*).) Absent direct evidence of discrimination, the plaintiff can defeat summary judgment "by pointing to evidence which . . . raises a rational inference that intentional discrimination occurred." (*Ibid.*) If there is no substantial evidence that the nondiscriminatory reason proffered by the employer is pretextual, summary judgment for the defendant will be appropriate. (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 553 [once employer satisfies its burden, "the employee must demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination"]; see also, e.g., *Guz*, *supra*, at 362 [summary judgment for employer appropriate where, "given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred"]; *Moore v. Regents of University of*

10

*California* (2016) 248 Cal.App.4th 216, 238.) We review a trial court's summary judgment ruling de novo, viewing the evidence in the light most favorable to the non-moving party. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

> 1. *The call-in and attendance policies are lawful*

Congress passed the FMLA in 1993 in an attempt "to balance the demands on the workplace with the needs of families." (29 U.S.C. § 2601(b)(1).) The FMLA "entitle[s] employees to take reasonable leave for medical reasons" (29 U.S.C. § 2601(b)(2)), but employees must do so "in a manner that accommodates the legitimate interests of employers." (29 U.S.C. § 2601(b)(3).) That means that while an employee has a right to take leave under the FMLA, the employee must give his employer notice of his intention to take leave to be entitled to it. (29 U.S.C. § 2612(e)(1) & (2).)

According to FMLA's implementing regulations, when the need for leave is foreseeable, the employee generally "must provide the employer at least 30 days advance notice before FMLA leave is to begin." (29 C.F.R. § 825.302(a).) If extenuating circumstances make that impracticable, "notice must be given as soon as practicable" (29 C.F.R. § 825.302(d)) and "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances" (29 C.F.R. § 825.303(a)). The regulations state an employer's procedural requirements for leave requests can appropriately require the employee to contact a specific individual or call a designated phone number. (29 C.F.R. § 825.303(c) ["When the need for leave is not foreseeable, an employee must comply with the employer's usual and

11

customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave"]; see also 29 C.F.R. § 825.302(d) ["Unusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full"]; *Acker v. General Motors* (5th Cir. 2017) 853 F.3d 784, 790.) When an employee does not comply with the employer's customary notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied. (29 C.F.R. § 825.302(d); 29 C.F.R. § 825.303(c).)

Plaintiff argues RGC's call-in and attendance policies are "void" because they "conflict with, and violate[ ] the express terms and purpose of the [FMLA]" and are "burdensome and oppressive as applied to Plaintiff . . . ." He also asserts, without citation to the record, that "[i]t can be reasonably inferred that [the call-in policy] was adopted to rid the company of employees, including [Plaintiff], who exercise their FMLA rights on a regular basis." Neither point is persuasive.

As just discussed, FMLA's implementing regulations expressly contemplate employers may implement call-in policies that will be fully consistent with FMLA (and the regulations themselves). In urging the contrary, Plaintiff does not rely on any provision of FMLA itself, and he cites parts of the regulations that actually provide no support for his view that a call-in requirement of the type implemented by RGC is too burdensome.

12

(See, e.g., 29 C.F.R. § 825.303(a) ["It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave"]; 29 C.F.R. § 825.220(c) [stating, in general terms, that FMLA's "prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights" and barring counting FMLA leave under no fault attendance policies—which RGC's does not].)  There is nothing in FMLA itself or its implementing regulations that prohibits an employer from adopting an evenhanded advance call-in policy, particularly one like the policy here that requires only an hour's advance notice.[7]  Indeed, many cases hold, as we do, that such a

---

[7]     Plaintiff cites *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686 (*Roby*) for the proposition that RGC's call-in and attendance policies are burdensome and oppressive.  In that case, our Supreme Court did not address the lawfulness of a FMLA call-in policy; the court instead was asked to decide the constitutionality of a punitive damages award and, in discussing why the employer's conduct was not reprehensible, observed:  "With respect to the discrimination claim, employer McKesson's wrongdoing was limited to its one-time decision to adopt a strict attendance policy that, in requiring 24-hour advance notice before an absence, did not reasonably accommodate employees who had disabilities or medical conditions that might require several unexpected absences in close succession."  (*Id.* at 713.) *Roby* does not stand for the proposition Plaintiff claims, and even if it did, the 24-hour advance notice policy was significantly more stringent than the one-hour advance notice call-in policy at issue here.

13

call-in requirement is not overly burdensome or inconsistent with FMLA. (*Lewis v. Holsum of Fort Wayne, Inc.* (7th Cir. 2002) 278 F.3d 706, 708-709 [employer's policy of requiring employees to call in at least an hour before being unable to report for duty is permissible under FMLA]; accord, *Srouder v. Dana Light Axle Mfg., LLC* (6th Cir. 2013) 725 F.3d 608, 614 [affirming grant of summary judgment to employer because employee failed to follow the call-in requirements of employer's attendance policy]; *Twigg v. Hawker Beechcraft Corp.* (10th Cir. 2011) 659 F.3d 987, 1008-09 [affirming summary judgment for employer where employee failed to comply with employer's notification policy]; *Brown v. Auto. Components Holdings, LLC* (7th Cir. 2010) 622 F.3d 685, 690; *Bacon v. Hennepin County. Med. Ctr.* (8th Cir. 2008) 550 F.3d 711, 715 ["Employers who enforce [call-in] policies by firing employees on FMLA leave for noncompliance do not violate the FMLA"].)

In addition, Plaintiff adduced no evidence that RGC implemented the policy to, as he asserts, rid the company of employees who exercise their FMLA rights. Such argumentative speculation is not reasonable inference.

> 2. *There is no evidence sufficient to permit a jury to find RGC's stated legitimate, non-discriminatory reason for firing Plaintiff was pretext for discrimination*

Defendants presented evidence that Plaintiff was terminated for a legitimate, nondiscriminatory reason, namely nonadherence to the call-in and attendance policies, which further valid business objectives. To rebut Defendants' showing, Plaintiff needed to present substantial evidence on which a jury

14

could rely to conclude the policy noncompliance was pretextual and unlawful disability or age discrimination was instead a substantial motivating factor in Plaintiff's termination.

There is no such evidence in the summary judgment record. It is undisputed Plaintiff was aware of the policy, understood it, and used it successfully dozens of times in the year preceding his dismissal to obtain FMLA leave for an absence or late arrival.  It is also undisputed Plaintiff steadily accumulated points when he failed to comply with RGC's call-in policy, did not timely contest those points, and was repeatedly advised by RGC (orally, in writing, and through a five-day suspension without pay) that his rising point total was placing him in increasing danger of being terminated for noncompliance with the policy.  Although Plaintiff ultimately challenged the assessment of certain points prior to his termination, he did not present evidence that the challenged points were incorrectly assessed (other than assessment of half a point for being late on February 9, 2015, which Defendants concede was an administrative error).[8]

In addition, Plaintiff did not present evidence that RGC gave shifting, contradictory, implausible, uninformed, or factually

---

[8]     Plaintiff asserts the point he received as the result of a late arrival on February 5, 2015, should not have been assessed, but his reason for so asserting is difficult to pin down.  He cites no record evidence that he called at least an hour in advance of his scheduled start time to report he would be late, RGC's records indicated he did not make such a call, and Plaintiff himself testified during his deposition that he did not remember whether he called in advance that day.

15

baseless justifications for his termination.[9] On the contrary, the evidence indicated RGC acted in an informed, consistent, and rational manner. Before terminating Plaintiff, RGC investigated his absence on March 29 and reviewed his work history, including his many approved and unapproved absences, and ultimately decided to terminate Plaintiff in accordance with the terms of the attendance policy for his failure to comply with the call-in policy. Additionally, at the time of his termination, Plaintiff and his representatives advised RGC he failed to comply with the call-in policy on March 29, not because of his medical condition or because the policies were incomprehensible and/or unreasonable in light of his medical condition, but because he made a mistake and forgot to check his work schedule.

---

[9] The vague and speculative Wasp declaration, which does not detail how he and Plaintiff might have been similarly situated, is not substantial evidence establishing a triable issue of material fact as to whether the non-discriminatory reason proffered by Defendants for their termination of Plaintiff's employment was pretext for age discrimination. (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038 [affirming summary judgment in favor of employer, stating "'[S]peculation cannot be regarded as substantial responsive evidence'"]; accord, *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1535 [affirming summary judgment for employer and holding speculative evidence of disparate treatment was insufficient to show employer's proffered justification was untrue or pretextual under FEHA].)

### B. Summary Adjudication of the Causes of Action for Failure to Accommodate and Engage in the Interactive Process Was Proper

FEHA requires employers "to make reasonable accommodation for the known physical or mental disability of an . . . employee." (Gov. Code, § 12940, subd. (m)(1).) The statute further requires employers "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (Gov. Code, § 12940, subd. (n).) Although these obligations are distinct and may support separate legal claims, it is established that each obligation "necessarily implicates the other." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54.)

"The employee must initiate the [interactive] process unless the disability and resulting limitations are obvious. 'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.' [Citation.]" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013.)

It is undisputed that Plaintiff never requested an accommodation that would permit him to comply more consistently with the call-in and attendance policies, nor does he in any event specify what such an accommodation might have been. Instead, Plaintiff argues he did not have to request an accommodation because his need for one was "obvious" in view of

17

his history of noncompliance with the call-in policy. Plaintiff's argument cannot be squared with the record.

In the decade after Plaintiff first notified RGCthat he suffered from asthma, RGC accommodated his disability by granting him intermittent FMLA leave whenever he complied with generally applicable requirements for obtaining such leave. After RGC instituted call-in and attendance polices, Plaintiff successfully used the policies on dozens of occasions in the year preceding his termination to avoid being assessed points for absences or late arrivals. In response to the series of written warnings that he received for his steadily increasing point total, Plaintiff never requested or indicated a need for a further accommodation in order to comply with the policies. Further, both Plaintiff and his union representative attributed the points that triggered his automatic termination (the "no call, no show" on March 29, 2015), not to any limitations his disability placed on his ability to comply with the policies, but on a simple failure by him to check his work schedule, an omission that he and his representative characterized as a "bonehead" mistake on his part.

Even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find on this record that Defendants were responsible for a breakdown in the interactive process or refused to make a reasonable accommodation. Accordingly, Defendants were entitled to judgment as a matter of law on Plaintiff's causes of action for failure to participate in the interactive process and failure to accommodate Plaintiff's physical disability.

18

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.


We concur:



RUBIN, P. J.



KIM, J.